BERTHA BONGIO GLEICH ET VIR V. FELIX BONGIO ET AL.

No. 6778. Decided January 6, 1937.
Rehearing overruled February 10, 1937.
(99 S. W., 2d Series, 881.)

*A. M. Waugh,* of Houston, for plaintiff in error.

Property acquired during the marriage of the parties partly with the separate funds of the husband, and partly upon the faith and credit of the community, does not become the separate property of the husband, but he has only an equitable interest therein to the extent of his contribution toward the purchase price. Parker v. Coop, 60 Texas, 117; Ralls v. Ralls, 256 S. W., 688; McClintic v. Midland Grocery Co., 106 Texas, 32, 154 S. W., 1157.

On the presumption that where property is acquired under an agreement·between husband and wife that property so purchased shall become the separate property of one or the other that such agreement shall govern and vest the title accordingly, and in the absence of such agreement the title shall vest in the

community. Love v. Robertson, 7 Texas, 6; Braden v. Gose, 57 Texas, 37.

*E. R. Campbell,* of Houston, for defendant in error.

On counter propositions. Zorn v. Tarver, 45 Texas 519; Id., 57 Texas, 388; Whitmire v. May, 96 Texas, 317, 72 S. W., 375; Howard v. York, 20 Texas, 670.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This is a suit by plaintiff in error, Bertha Bongio Gleich, joined pro forma by her husband, August Gleich, Jr., against defendants in error, Felix Bongio, Sam Bongio and the latter's wife, Margaret, to recover an undivided interest in certain lots situated in the City of Houston and for partition and an accounting. Felix Bongio was formerly the husband of plaintiff in error. No statement of facts accompanies the record, but the transcript contains a stipulation with regard to certain facts and the following findings of fact made by the trial court:

"The Court finds that the following are the material facts proved in this case:

I.

"That Felix F. Bongio and Bertha Bongio had been man and wife for approximately nine (9) years when divorced on or about the 5th day of May, 1930.

II.

"That during the coverture of plaintiff, Felix F. Bongio and Sam Bongio purchased Lots one (1) Two (2) Three (3) Twelve (12) Thirteen (13) and Fourteen (14) in Block one (1) of the Brady Addition to the City of Houston, at a price of Twelve Thousand Dollars ($12,000.00) paying therefor the sum of Five Thousand Dollars ($5,000.00) Two Thousand Dollars ($2,-000.00) of which was shown as paying the full purchase price of Lot Number Three (3) and Three Thousand Dolars ($3,-000.00) been applied on the remaining five (5) lots, leaving Seven Thousand Dollars ($7,000.00), deferred payments thereon, secured by a vendor's lien on said five (5) lots.

"That the cash payment of Five Thousand Dollars ($5,-000.00), was made out of the separate estates of Felix Bongio and Sam Bongio, and that this same constituted their respective entire separate estates.

"That subsequently lots Twelve (12) Thirteen (13) and Fourteen (14) were sold for a cash price of Eleven Thousand Five Hundred Dollars ($11,500.00), out of which the Seven Thousand Dollars ($7,000.00) vendor's lien was retired.

### III.

"That on October 26, 1929, Felix Bongio and Sam Bongio, joined by their wives, executed a deed of trust on the remaining lots to D. Guarino, to secure a note for Thirty-five Hundred Dollars ($3,500.00) for the purpose of constructing improvements on the said lots.

### IV.

"That there was no agreement at any time between Felix Bongio and Bertha Bongio that the said property in the Brady Addition, so purchased, was intended to be or become the separate property of Felix F. Bongio.

### V.

"That the parties agreed between themselves as to the division of their personal community property at the time of their separation and in regard to their real property with the exception of the said six (6) lots in question in the Brady Addition, and part of this agreement consisted in the premises of Felix Bongio to pay the plaintiff the sum of Two Hundred Fifty Dollars ($250.00), for her interest in a separate lot, Fifty Dollars ($50.00) of which has been paid, leaving Two Hundred Dollars ($200.00) still due."

In the trial court it was decreed that plaintiff in error recover a 7/48 interest in and to lots 1, 2 and 3, subject to the indebtedness existing against same, together with the sum of $200.00, balance due under the settlement agreement. The decree adjudged "that a partition is here made," but no commissioners were appointed to make partition in kind, nor was any provision made for the sale of the lots and division of the proceeds. The decree contained a further provision "that in all other matters in controversy that plaintiff take nothing from defendants and that defendants recover nothing from plaintiffs by reason of their cross action." These provisions leave some uncertainty as to what disposition was made of the prayer for partition, but since the case is to be remanded to the trial court, we deem it unnecessary to construe the judgment with reference to the question of partition. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment that plaintiff in error take nothing by her suit to recover an interest in the lots. 71 S. W. (2d) 291. In our opinion neither judgment is correct.

It is obvious, we think, that plaintiff in error has no interest in lot No. 3. By the findings of fact that lot was purchased by Felix and Sam Bongio for $2,000.00, all of which consideration

was paid in cash with their separate funds. No community funds or obligations formed a part of the consideration. That portion of the trial court's judgment awarding plaintiff in error an interest in that lot is erroneous. Since plaintiff in error practically concedes error in this partcular, no further discussion thereof seems appropriate.

The status of lots 1 and 2 is different. These lots, together with lots 12, 13 and 14, were purchased by Felix and Sam Bongio for $10,000.00. The cash payment of $3,000.00 made on the purchase price was from their separate funds, but the deferred payment of $7,000.00 was evidenced by notes secured by a vendor's lien on all five lots. Later, Lots 12, 13 and 14 were sold for $11,500.00, and it was out of that fund that the deferred payment of $7,000.00 was made. The question thus presented is: What is the status of property, with reference to its being separate or community, when purchased during marriage partly with separate funds of the husband and partly on the credit of the community? The question presented cannot be distinguished from one in which a part of the purchase price is paid with the separate funds of the husband and the remainder with money borrowed on the credit of the community. 23 Tex. Jur., p. 127, et seq., sec. 104. Money borrowed on a community obligation is community property. Similarly, property acquired on the credit of the community is community property. Had no cash consideration been paid for these lots and the entire consideration been a community obligation, it would probably not be contended that the property is not wholly community. It would follow, it seems to us, as a matter of course, that, since a community obligation constituted a part of the purchase price, the community estate acquired a part interest in the lots. It seems to be the rule in some jurisdictions that property purchased partly with community funds and partly with separate funds of one of the spouses falls into the community, but in Texas, it has long been established that such an acquisition has the effect of creating a kind of tenancy in common between the separate and community estates, each owning an interest in the proportion that it supplies the consideration. The rule is well stated in 31 C. J., p. 40, sec. 1132, in this language:

"Generally purchases made partly with separate and partly with community funds will be community property to the extent and in the proportion that the consideration is furnished by the community, the spouse supplying the separate funds having a

separate interest therein to the amount of his or her invest-
ment, the tenure of the whole property in such cases being by
way of a sort of tenancy in common between the separate and
community estates, * * *."

A long list of Texas cases are cited in support of the text
and it is unquestionably a correct general statement of the
established rule in this jurisdiction.

We quote from the opinion of Justice Williams written while
he was a member of the Court of Civil Appeals in the case of
Goddard v. Reagan, 28 S. W., 352, as follows:

"* * * It also appeared that of $1,000, which was the con-
sideration paid for the 200-acre tract, $700 was the money of
the wife. The other $300 was borrowed from one Roach, for
which the joint note of Reagan and wife was given, and the
money so obtained was paid for the land. Some four or five
weeks after the land had been thus paid for and acquired, the
note given to Roach was paid out of funds of the wife, which
had been received from Tennessee. It is claimed that from
these facts it appears that the whole of the consideration for
the 200 acres was paid with the wife's separate means. But
this contention is contrary to the decisions of the Supreme
Court. The money borrowed from Roach was community funds;
the note given to him was a community debt, and when paid
out of the wife's money became, perhaps, a claim in her favor
against the common estate, or against her husband. The title
to the land had, however, been acquired, and its status was
fixed at the time of its acquisition. As $300 of the price paid
for it was common funds, and $700 the separate funds of the
wife, the equitable title in a three-tenths interest vested in the
community estate, and seven-tenths in the wife. Heidenheimer
v. McKeen, 63 Tex. 229; Parker vs. Coop, 60 Tex. 117. The
court below held the whole of the 200 acres to have been the
separate property of the wife, and for this the judgment must
be reversed."

■ The case seems to have been tried on the theory that the
rule above announced does not preclude or contradict a holding
that the intention of the husband and wife at the time the
property is acquired determines its status with reference to
its separate or community character. The trial judge found as
a fact that there was no agreement between the husband and
wife that the property was intended to be or become the sepa-
rate property of the husband, and upon the basis of that fact
finding concluded that it was, in part, community. Does the

intention of the husband and wife at the time property is purchased upon a community obligation determine whether it is to become community property or the separate property of one of the spouses? It would appear that probably there is not complete harmony in the decisions on that question. Recent opinions of this Court, however, have pointed out the true nature of agreements having that affect.

In Brokow v. Collet (Com. App.), 1 S. W. (2d) 1090, it was held:

"* * * It does not lie in the power of the husband and wife by contract between themselves, made in advance, to set aside the Constitution of this state, as applied to the wife's separate property rights. * * *."

In Foster v. Christianson (Com. App.), 67 S. W. (2d) 246, Judge Smedley clearly expressed the true rule in this language:

"The land, of course, presumptively became the community property of Mr. and Mrs. Newgent when it was conveyed to them jointly with no recital of her separate ownership; but her ownership of the land as her separate property would have been established by proof of the allegations in the answer that the cash payment was made out of her separate funds and that it was agreed at the time *by the parties to the deed* that the land should be her separate property and that the balance of the purchase money should be paid out of her separate funds. * * *." (Italics ours.)

In the case of Solether v. Trinity Fire Insurance Co., 124 Texas, 363, 78 S. W. (2d) 180, Judge (now Justice) Critz, quoted with approval from Judge Smedley's opinion and reannounced the holding made therein. The mere intention of the husband and wife cannot convert property purchased with an obligation binding upon the community into the separate estate of either spouse. To accomplish that purpose the vendor must have agreed with the vendee to look only to his or her separate estate for the satisfaction of the deferred payments.

■ The interest of plaintiff in error in lots 1 and 2 should be arrived at in this manner: Those lots, together with lots 12, 13 and 14, were purchased for a consideration of $10,000.00. Of this consideration ½ of $7,000.00, or $3,500.00, was furnished by the community of Felix and Bertha Bongio. The interest of that estate in the property was, therefore, 3500/10,000ths. The wife's interest is ½ of that fraction, or 3500/20,000ths, or 7/40th. Since lots 12, 13 and 14 have been sold, her interest is now 7/40ths of lots 1 and 2.

The findings of fact disclose that Felix and Sam Bongio, joined by their wives, have executed a deed of trust lien to secure a note for $3,500.00, for the purpose of constructing improvements on the lots. The question is not sufficiently developed or briefed here for us to declare the respective rights growing out of this transaction, but, in view of another trial, we make this observation: One-half of this borrowed money became the community property of Felix Bongio and his then wife, now plaintiff in error. In so far as that fund may have been used, if it was used, to erect improvements on lot 3, the separate property of the husband, the community estate is entitled to an accounting, if such improvements enhanced the value of the property. The improvement of separate property with community funds does not change the status of the property, but may create equities in favor of the community. Daken v. Daken, 125 Texas, 305, 83 S. W. (2d) 620, may be consulted as a guide on this question upon another trial.

The judgment of the Court of Civil Appeals and trial court are both reversed and the cause remanded.

Opinion adopted by the Supreme Court January 6, 1937.

Rehearing overruled February 10, 1937.