**Richard BLANCHARD et al., Appellants,**

v.

**Zuma BLANCHARD, Appellee.**

**No. 3381.**

Court of Civil Appeals of Texas.

Waco.

Sept. 20, 1956.

Rehearing Denied Oct. 11, 1956.

**826**

R. A. Kilpatrick, Cleburne, Melvin F. Adler, Fort Worth, for appellants.

Curtis White, Dallas, H. M. McPherson, A. C. Chaney, Cleburne, for appellee.

TIREY, Justice.

This is a suit in trespass to try title. Appellee, the surviving widow of Richard Blanchard, brought the suit against her adult stepchildren born to her husband by a previous marriage, and she claimed the land and chattels in suit as her separate property. The children answered, and by cross action set up that the land was community and that it was subject to a lien in favor of the father's separate estate, and sought an accounting with reference to the chattels allegedly taken over by the widow. The land was sold and the proceeds paid into the registry of the court to await the final disposition of the cause. The court invoked the parol evidence rule to reject certain testimony tendered by the children to show the community character of the land, and appellants contend that such ruling amounted to an instructed verdict on that issue. We are in accord with this view.

The jury in its verdict found substantially that Richard Blanchard, at the time the land in question was acquired, intended (1) that the interest in said land represented by the $6,000 note and mortgage which he and his wife signed, should be the separate property of his wife; (2) that Blanchard did not make a gift to his wife of all the personal property on hand at the time of his death; (3) that Blanchard's separate property was not invested in permanent improvements on the land.

"No. 6. Do you find from a preponderance of the evidence that all or any part of the money on deposit in the Cleburne Savings & Loan Association, and the $5,000.00 withdrawn from said Association and placed with S. B. Hudgins (Sheriff), is community property, or the proceeds from the sale, if any, of community property?" to which the jury answered "Yes."

"No. 7. What amount of such money, if any, do you find from a preponderance of the evidence, was the proceeds of the sale of the community property, if any, of Mrs. Zuma Blanchard and Richard Blanchard?" to which the jury answered "$1,383.41."

"No. 8. Do you find from a preponderance of the evidence that all or any part of the money placed in the City National Bank of Cleburne after the death of Richard Blanchard was proceeds of the sale of community property, if any, belonging to Mrs. Zuma Blanchard and Richard Blanchard?" to which the jury answered "Yes."

"No. 9. What amount of said money, if any, do you find from a preponderance of the evidence was the proceeds of the sale of community property, if any, of Richard Blanchard and Zuma Blanchard?" to which the jury anwered "$1,449.42."

"No. 10. Do you find from a preponderance of the evidence that any community property, if any, of Mr. and Mrs. Richard Blanchard was invested in permanent improvements on the land in question?" to which the jury answered "Yes."

"No. 11. What amount of money, if any, do you find from a preponderance of the evidence was invested from the community money of Mr. and Mrs. Richard Blanchard in permanent improvements on the land in question?" to which the jury answered "$1173.83."

"No. 12. How much, if any, do you find from a preponderance of the evidence that such permanent improvements, if any, enhanced the reasonable cash market value of the land in question?" to which the jury answered "$1673.83."

The court overruled defendant's motion for judgment, notwithstanding the verdict, and also overruled the motion of plaintiff requesting the court to ignore certain findings of the jury to certain special issues, but granted that portion of plaintiff's motion which sought judgment on the verdict and decreed that appellee recover of the defendants the title and possession of the land in suit. The court then proceeded to award to both plaintiff and defendants the sums that they were entitled to by virtue of the findings made by the jury, and pursuant to the stipulations of the parties, but provided that no execution may issue until the appeal of this case is finally disposed of. The defendants and cross plaintiffs seasonably perfected their appeal to this court.

The judgment is assailed on what appellants designate as eight points. They are substantially:

1. The court erred in refusing to admit parol evidence to refute the deed's recital that the cash payment of $8,000 on the purchase price was made out of the separate estate of Zuma Blanchard.

2. The court erred in overruling appellants' motion for instructed verdict.

3. The court erred in submitting to the jury Special Issue No. 1, the exceptions and objections to said special issue having been submitted at the proper time and being as follows:

"(a) Because there is no testimony of probative force authorizing the giving of said special issue;

"(b) Because it violates the parol evidence rule, in that it would allow parol evidence to change the contractual provisions of the considerations expressed in the deed;

"(c) Because what the parties intended to do by their deed is not controlling, but what they actually did is the controlling force;

"(d) Because it is evidentiary rather than conclusive."

4. The court erred in overruling the objections and exceptions of the appellant to the answer of Mrs. Estella White to Direct Interrogatories Nos. 1, 2, 3 and 4, wherein she stated: "I know that he was buying the land for his wife so that she would always have a place * * * and he wanted her to have a living after he passed on. That is what he told us, that he was buying it for

her." The objection to the interrogatories was that it was not responsive to the question, and "what she knew" is a conclusion of the witness.

5. The court erred in overruling the objections and exceptions of the appellants to the answer of Mrs. Estella White to Direct Interrogatory No. 8, which reads in part as follows: "If the answer is yes, please state whether or not to your knowledge she had any money of her own when she married Mr. Blanchard and if so, how much." The objection to the question and answer was that the question called for a conclusion and the answer constituted a conclusion.

6. The court erred in permitting Mr. Jess E. White, by answer to Direct Interrogatory No. 6, to state in substance "that he was signing some paper, 'so that Zuma would get it.' " The objection to the answer was that the paper which he signed would be the best evidence.

7. The court erred in overruling the objection and exception to the answer of Mr. Jess E. White to Direct Interrogatory No. 8, that he knew that Mrs. Zuma Blanchard had money of her own when she married Mr. Richard Blanchard, the objection to said answer being that it would constitute a conclusion.

A comprehensive statement is necessary. Richard Blanchard, father of the defendant children, married Zuma Blanchard on April 2, 1940. They were living in Richmond, California at the time of their marriage and did not move to Texas until about 1945. On August 13, 1943, S. B. Hudgins, father of Mrs. Blanchard, acting as her agent, entered into a contract to purchase the land in suit from Robert Crain, the owner. The contract of purchase does not mention Zuma Blanchard or Richard Blanchard, and on its face was for the benefit of S. B. Hudgins, Mrs. Blanchard's father. He testified that he acted as her agent. The consideration was $14,000, $8,000 cash, of which $2,000 was deposited to secure the transaction, and the balance of $6,000 was to be evidenced by a note for that sum, the note to be secured by a vendor's lien and deed of trust lien. Taxes for the current year were to be paid by the purchaser and the closing date was fixed for September 15, 1943. We quote the pertinent recitations in the deed:

"That we, Robert K. Crain and wife Lois Crain of the County of Gregg, state of Texas for and in consideration of the sum of Fourteen Thousand & No/100 Dollars, to ——— paid, and secured to be paid, by Mrs. Zuma Blanchard, as follows:

"(a) Eight thousand ($8000.00) Dollars, cash in hand paid, by Mrs. Zuma Blanchard, *out of her separate funds and estate,* receipt of which is hereby confessed and acknowledged.

"(b) Six Thousand ($6000.00) Dollars, evidenced by execution of one certain note of even date herewith, by Mrs. Zuma Blanchard, *joined by her husband, Richard Blanchard,* payable to the order of Robert K. Crain at Cleburne, Texas, and due and payable on or before November 15th, 1943, with interest from September 15th, 1943 at rate of 5% per annum and providing usual stipulations as to past due interest and attorneys' fees.

"(c) *Assumption by Grantee of all taxes for the year 1943.* have granted, sold and conveyed, and by these presents do Grant, Sell and Convey unto the said Mrs. Zuma Blanchard, of the County of Contra Costa, State of California * * * (S.F. 6) * * *

"To Have And To Hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Mrs. Zuma Blanchard, her heirs and assigns forever; and ——— do hereby bind ——— heirs, executors and administrators, to Warrant and Forever Defend all and singular the said premises unto the said Mrs. Zuma Blanchard, her heirs and assigns, against every person whomso-

ever lawfully claiming, or to claim the same, or any part thereof." (Emphasis ours.)

The deed was acknowledged September 7, 1943 and placed of record September 15, 1943. As further security for the $6,000 note, Zuma Blanchard and Richard Blanchard executed a deed of trust lien to J. E. Standley of Cleburne, Texas, as Trustee. This instrument was dated August 17, 1943 and was acknowledged by Mrs. Blanchard in Johnson County on August 18, 1943 and was signed and acknowledged by Richard Blanchard in California on August 30, 1943. This deed of trust was never recorded. There is an absence of testimony that Mr. Blanchard ever saw the deed, or that he knew about the recitals therein contained. In the first Deed of Trust that Mr. and Mrs. Blanchard executed and delivered to secure the $6,000 note, this instrument did not advise Mr. Blanchard that the property was conveyed to his wife as her separate estate, and in the foreclosure provision of the deed of trust, we find this provision: "Third, the remainder, if any there shall be after payment of all said costs and expenses, and the principal and interest of said note, shall be paid to the said Richard Blanchard and wife, Zuma Blanchard, or to their heirs, assigns or legal representatives." Thereafter, Mr. and Mrs. Blanchard executed and delivered two deeds of trust under date of September 24, 1943, each instrument reciting that Crain and his wife had deeded the property to Zuma Blanchard, these instruments having been executed and acknowledged in California, and the deeds of trust described the $6,000 note to Crain, which note was transferred by Crain to the Federal Land Bank of Houston and the Land Bank Commissioner. We find nothing in these last two deeds of trust to advise Mr. Blanchard that the land was deeded to Mrs. Blanchard as her separate estate. With reference to the disposition of the proceeds under foreclosure, we find this provision in each: "He shall pay the residue, if any, to mortgagors or their heirs, executors, administrators or assigns."

Going back to point 1, the court refused to permit the introduction by appellants of certain testimony by the witness, Margaret McNeil (set out in bill of exception), by which they attempted to refute the terms of the deed that $8,000 had been paid out of the separate estate of Zuma Blanchard. We quote the testimony of Mrs. McNeil that was tendered out of the presence of the jury and excluded:

"Q. Now, Mrs. McNeil, I will ask you to state whether or not, if you know, Mr. Blanchard came to Texas while the negotiations for the deed were being carried on? * * * A. He did not.

"Q. Now, Mrs. McNeil, I will ask you to state if you know, did you or not state that Mr. and Mrs. Blanchard had two thousand dollars in government bonds in your safe? A. Yes, I did.

"Q. Do you know where they got the money with which to buy the bonds? A. Part of them were taken in the payroll savings with the Richfield Oil Company, the payroll plan; and we had a drive in El Cerrito, and Mrs. Blanchard and I each bought $1500.00 from the officials of the El Cerrito drive, and we were Chairmen of the drive.

"Q. Where did she get the money to buy the bonds with, do you know? A. Well, she gave a check.

"Q. All right, if you know, where did she get the money to put in the bank? A. She and Mr. Blanchard's salaries.

"Q. It was savings from her salary and from Mr. Blanchard's? A. That's right.

"Q. All right, that was two thousand dollars worth of bonds; now then, do you know whether or not there was any other money in California in the name of Mr. or Mrs. Blanchard, or

both of them? A. They had a checking account at the Mechanic's Bank at El Cerrito.

"Q. Do you know about how much that was? A. From time to time I made their deposits for them personally myself, and I had their bank book in my possession on different occasions.

"Q. When she asked you to do something for her, did you get something out of that bank to send to her down here? A. I got the bonds.

"Q. The bonds? A. Yes, sir.

"Q. What else did you get? Did you get a cashier's check? A. Yes, I did.

"Q. Did it come from the same source that the bonds did, did the money come from the same source the bonds did, from hers and Mr. Blanchard's earnings? A. Yes, sir.

"Q. Did you say there was $2,000.-00 worth of bonds? A. Yes, sir.

"Q. And $4,000.00 in the Mechanic's Bank? A. Yes, sir.

"Q. And where did the other $2,-000.00 come from, if you know, Mrs. McNeil? A. It came from my establishment, of her money and Mr. Blanchard's money, that we used to cash payroll checks with.

"Q. Was it kept in your possession? A. Yes, sir.

"Q. Then all of that money, the eight thousand dollars, that she sent for while she was down here, about August or September of 1943, was sent to her by you? A. Yes, sir, that's right.

"Q. $2,000.00 in bonds? A. Yes, sir.

"Q. And $2,000.00 out of your cash drawer? A. Yes, sir.

"Q. Was that a loan or did they actually own that at that time? A. They owned it.

"Q. And then $4,000.00 from the Mechanic's Bank? A. $4,000.00 from the Mechanic's Bank, yes, sir.

"Q. And all of that money came from her and Mr. Blanchard, that was savings from their earnings? A. That's right.

"Q. Now then, Mrs. McNeil, after you came to Texas did you ever hear your father, S. B. Hudgins, say anything about the recitations in the deed about the eight thousand dollars? A. Yes, sir.

"Q. What did you hear him say? A. That he had the deed fixed up in order to protect Mrs. Blanchard.

"Q. Did he say anything about the Blanchard children at that time? A. Yes, he did.

"Q. What did he say? A. He said that he would prevent them from getting that $8,000.00.

"Q. By that recitation in the deed? A. Yes, sir. * * *"

Appellants also included as a part of their bill, testimony of Mr. S. B. Hudgins at a former trial, wherein he said:

"Q. Then an agreement was made as to the purchase of this land? A. Yes, sir.

"Q. By your daughter, Mrs. Blanchard? A. Yes, sir.

"Q. Or through you as her agent? A. That's right. I done all the trading."

Appellants also made the deed tendered in evidence part of the bill. Attorneys for appellants added this to the bill:

"I want to further object to the exclusion of Mrs. McNeil's testimony in regard to the source of the $8,000.00

purchase price as recited in the deed, for the reason that it is in direct repudiation of the testimony of Estella White and Jess E. White, submitted by the plaintiff, and that the plaintiff having opened up the matter we are entitled to rebut it.

"The Court: Sustain the plaintiffs' objection to this matter and will not admit the testimony of Mrs. McNeil on that point."

To which defendant excepted.

 Did the court err in excluding the testimony of Mrs. McNeil? It is our view that he did, and that such error will require a reversal and remand of this cause.

Much has been written by our Texas courts on this question, and the last expression of our Supreme Court on this question is found in Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900, 904, and we think the pronouncements in that case are applicable and controlling here. See points 1, 2, 3 and 4. The evidence here is without dispute that the husband had no part in the negotiations that led up to the sale of the land and the preparation of the deed. It is also without dispute that all of the negotiations for the purchase of the land were carried out by Mrs. Blanchard's father. As we understand Mrs. Blanchard's testimony, she stated in effect that she was living in California when they bought the farm, and that she had decided to buy the farm while on a trip to Texas. There is an absence of any testimony to the effect that Mr. Blanchard was consulted with reference to the trade in any manner whatsoever, or that he knew or participated in any manner whatsoever in the preparation of the deed. We have previously stated that there is no evidence to the effect that he ever saw the deed, or that he knew or was familiar with the recitals therein. We think it pertinent here to remark that neither appellees nor appellants plead any fraud or mistake in the preparation and the execution and delivery of the

deed. In Hodge v. Ellis, point 3, we find this statement of the rule: "Where the husband is a party to the purchase for the purported separate interest of the wife, even though his name may not appear in the document * * * there is good reason to presume the recitals in the deed to be true, because his position as regards the wife and the community is much the same as if he were the grantor, and in the latter situation it would be at least unusual that he should intend to convey to the community when the property was already community or even where it was his separate property. * * * *But the situation is otherwise when the husband is not a party to the purchase.* [Citing cases.]" (Emphasis ours.) That is the exact situation here before us.

"In Kearse v. Kearse, Tex.Com. App., 276 S.W. 690, where the transaction was between the wife and her daughter, the consideration being all in the form of notes signed by the former only, the court, in ruling against the wife's claim of separate property, emphasized the fact of nonparticipation of the husband as distinguishing cases like Goldberg v. Zellner [Tex.Com.App., 235 S.W. 870] and Kahn v. Kahn [94 Tex. 114, 58 S.W. 825]. The Kearse case and our decision in Van v. Webb, 147 Tex. 299, 215 S.W.2d 151, also point up the difference, from the standpoint of presuming a gift between situations where the husband is a party and those where he is not. As suggested by Professors McCormick and Ray (Texas Law of Evidence, p. 956, especially Note 26), in connection with the parol evidence rule, a third party grantor, not interested in the community one way or another, has no standing whereby to impose a particular character on the estate conveyed; so the recital in his deed may be regarded merely as one of an existing fact, which may properly be disputed by evidence, as distinguished from an op-

erative portion of the deed, which it probably is where the husband is a party and which ought not to be contradicted by parol. Lindsay v. Clayman, supra [151 Tex. 593, 254 S.W.2d 777], clearly recognizes the inapplicability of the parol evidence rule to situations in which the husband, claiming the property to be community, was not a party to the purchase.

"(4) Thus in the latter instance not only is the husband free of the parol evidence rule in proving the community nature of the transaction as against the separate property recitals in the deed, but also there would seem to be little more reason to apply a presumption from the recitals in favor of the wife's separate estate than to apply the elemental presumption to the contrary effect. It is accordingly reasonable to say that in such a case, once there is adduced evidence of probative force tending to show the property to have been purchased with community funds, the question as to the status of the property is ordinarily one of fact."

We think the facts here show that this cause falls squarely within the rule above stated. There is nothing in this record that shows that Blanchard, if he had been living, committed any act to estop him from showing that the $8,000 cash paid was community instead of the separate funds of his wife, as recited in the deed. And since he was not cut off, neither were his children.

We are of the further view that the court erred in submitting Special Issue No. 1 in its main charge. Such issue was: "Do you find from the preponderance of the evidence that Richard Blanchard, at the time the land in question was acquired, intended that the interest in said land represented by the $6,000.00 note and mortgage which he and his wife signed, should be the separate property of Zuma Blanchard?" To which the jury answered "Yes." We are of the view that such issue

was not tendered by the evidence, and if we are mistaken in this behalf, we are of the further view that the evidence is insufficient to support the verdict of the jury thereon.

We have previously stated that there was no pleading on the part of appellee to the effect that there was any mistake or fraud practiced upon her in the preparation, execution and delivery of the deed. Since the evidence is without dispute that Mrs. Blanchard decided to purchase the property after she came to Texas and, so far as this record shows, without any communication, conference or instruction from her husband as to whether or not the trade should be made; and since the evidence is without dispute that Mrs. Blanchard's father conducted the negotiations for the trade and attended to the closing of the transaction, it is difficult for this court to understad how Mr. Blanchard could have intended to convey the property in question to his wife as her separate estate when he knew nothing about the negotiations or the recitals in the deed. There is a total absence of testimony that Mr. Blanchard had any knowledge of the negotiations carried on by Mr. Hudgins for the purchase of the property, or that he was familiar with the recitals in the deed. In this connection we think it pertinent to remark that the deed does not convey the property to Mrs. Blanchard as her separate estate.

It is our view that the foregoing point is ruled by the pronouncements of our Supreme Court in Solether v. Trinity Fire Insurance Co., 124 Tex. 363, 78 S.W.2d 180, 182 (Tex.Com.App., opinion adopted) and Gleich v. Bongio, 128 Tex. 606, 99 S.W.2d 881, 884. Going back to the Solether case, we find this statement:

"It is settled by the statutes and decisions of this state that property acquired by purchase during marriage, whether the conveyance be in the name of the husband or in the name of the wife, or in the names of both, is prima

facie community property. * * * This presumption can be rebutted by satisfactory proof, except as to bona fide purchasers and contract lien creditors without notice. * * * Such presumption is rebutted as to the wife when it is established that the property was paid for out of her separate estate. * * * *Before the portion of the title represented by notes can be held to belong to the separate estate of the wife, it must be shown 'that it was agreed at the time by the parties to the deed that the land should be her separate property and that the balance of the purchase money should be paid out of her separate funds.'* " Citing Foster v. Christensen, Tex.Com.App., 67 S.W.2d 246, opinion approved.

Going back to the case of Gleich v. Bongio, supra, our Supreme Court, in discussing Foster v. Christensen, said: " * * * Judge Smedley clearly expressed the true rule in this language:

" 'The land, of course, presumptively became the community property of Mr. and Mrs. Newgent when it was conveyed to them jointly with no recital of her separate ownership; but her ownership of the land as her separate property would have been established by proof of the allegations in the answer that the cash payment was made out of her separate funds and that it was agreed at the time by the parties to the deed that the land should be her separate property and that the balance of the purchase money should be paid out of her separate funds.' * * *

"In the case of Solether v. Trinity Fire Insurance Co., * * * Judge (now Justice) Critz quoted with approval from Judge Smedley's opinion and reannounced the holding made

therein. *The mere intention of the husband and wife cannot convert property purchased with an obligation binding upon the community into the separate estate of either spouse. To accomplish that purchase the vendor must have agreed with the vendee to look only to his or her separate estate for the satisfaction of the deferred payments.*" (Emphasis ours.)

As we understand our Supreme Court as expressed in Hodge v. Ellis, supra, and in Jackson v. Hernandez, 285 S.W.2d 184, the rule stated in the Solether and Bongio cases is still the law in Texas. Again, no rule is better settled than the one announced by the Supreme Court to the effect that "the character of property, whether separate or community, is fixed at the very time of acquisition." See Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328, points 2 and 6, at page 334.

It follows from what we have said that we are of the view that Special Issue No. 1 was not tendered by the evidence, but if we are mistaken in this view, we think the evidence tendered is insufficient to sustain the answer of the jury thereto.

Going back to appellants' point 4, we think the exception of appellants to the answer of Mrs. Estella White should have been sustained to that part of the question where she was permitted to testify as to what "she knew", on the ground that it is and was a conclusion of the witness. She should be permitted to state the facts. We overrule appellants' points 2, 5, 6 and 7.

For the reasons above stated, the judgment of the trial court is reversed and the cause remanded.

HALE, J., not participating.