**Margaret Arlene HUMPHREY, Appellant,**

v.

**James Burns HUMPHREY, Appellee.**

**No. B2143.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Jan. 16, 1980.

Rehearing Denied Feb. 6, 1980.

Larry D. Wagenbach, Houston, for appellant.

Bryan W. Scott, Harding J. Rome, Law Offices of Bryan W. Scott, Houston, for appellee.

Before COULSON, SALAZAR and JUNELL, JJ.

JUNELL, Justice.

This appeal is from a judgment granting a divorce, dividing the property of the parties and denying a bill of review of a prior judgment of divorce.

The first marriage of Margaret Arlene Humphrey, appellant, and James Burns Humphrey, appellee, occurred in June, 1974. A divorce suit was filed in July, 1974, and divorce was granted in May, 1975. The parties later remarried, and in June, 1978, a divorce suit was filed. In July, 1978, appellant filed a Petition for Bill of Review of the judgment of May, 1975, claiming her signatures on the waiver of citation and the property settlement agreement were obtained by fraud. The bill of review proceeding and the divorce suit were consolidated. Trial was to a jury.

Appellant complains of the trial court's action in bifurcating the trial. It is contended that the entire case should have been tried and submitted to the jury in one charge.

■ We find no error in the bifurcation of the trial. Tex.R.Civ.P. 174(b) authorizes separate trials "in the furtherance of convenience or to avoid prejudice."

Separating the bill of review issues from the property issues saved time for all concerned. By first hearing evidence on the bill of review and receiving a jury verdict thereon, the court was able to limit the evidence during the second part of the trial to property accumulated subsequent to the second marriage, the date of which was stipulated by the parties after the jury had returned its verdict on the bill of review issue. Evidence regarding property accumulated during the first marriage became wholly irrelevant.

A similar question was presented on appeal in *McKellar v. Bracewell*, 473 S.W.2d 542 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n. r. e.). In *McKellar*, plaintiff sued for breach of contract and damages. Breach of contract was tried first and the second trial was to adjudicate damages. Since no breach of contract was found, no trial on damages was necessary. Regarding the application of Rule 174(b) in that case the court stated:

By the express terms of Rule 174(b), supra, the trial court has wide discretion to order separate trials when judicial convenience is served and prejudice avoided. In the present case, the order granting separate trials served these salutary purposes. A prolonged inquiry into the unbilled hours and the meticulous evaluation of assets, admittedly a process which would have considerably extended the trial of this case, was avoided. Instead, a determination by the jury that the partnership contract had not been breached served to avoid the necessity of a protracted trial on the pleaded damages. Convenience was served without doing violence to the rights of the parties. 473 S.W.2d at 546.

Appellant relies on Tex.R.Civ.P. 270, which provides that ". . . in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." We hold that this rule was not violated by the trial court. No evidence on the bill of review issues was received after the jury verdict on those issues.

■ Appellant next contends that the trial court erred in refusing to submit to the jury a special issue inquiring whether Humphrey Company, Inc. is the alter ego of James Burns Humphrey. Appellee owned all of the capital stock of Humphrey Company, Inc. before his first marriage to appellant. Between the stipulated date of the second marriage and the date of the trial the corporation's retained earnings increased by more than $300,000.00. Appellant claims that the amount of increase in such retained earnings constitutes community property under the alter ego theory. We hold that there was no evidence raising the alter ego theory; therefore, the trial court correctly refused to submit appellant's requested issue.

Humphrey Company, Inc. is a Texas corporation. Appellee owns all of the capital stock and is president and one of three directors of the company. The number of employees varies, depending on the number

of jobs the company is handling at any given time. Sometimes the company will employ more than seventy people. The undisputed evidence is that the corporate books were regularly kept in a manner acceptable to various government agencies, including the Internal Revenue Service. Corporate income is properly accounted for. The board of directors included two persons other than appellee; and that board of directors fixed the salaries of appellee and the other directors, who were also employees of the corporation. Also, the board of directors declared and fixed the amounts of bonuses awarded to appellee and the other officers and employees in management positions. The company has two vice-presidents who exercise significant control over the day-to-day operations of the company. Those vice-presidents negotiate bids and have authority to enter into contracts on behalf of the company. Corporate decisions are made by the board of directors and not by appellee alone. Appellee oversees the major financial and bonding decisions and determines the volume of work the company undertakes. Appellee's role in the corporation was characterized by the outside accountant for the company as that of a reasonable businessman managing a corporation. He made sound business decisions based on the corporation's earnings and the tax consequences. His salary was regularly supplemented by substantial bonuses, which were always approved by the board of directors and based on advice from the accountant.

Even though the corporation increased its retained earnings substantially during the second marriage of the parties, appellee received in salary, bonuses and rentals on separate real property an amount far in excess of the increase in retained earnings.

The evidence showed that the corporation frequently paid personal debts of appellee; but those payments were always set up on the corporate books as an account receivable from appellee and were always repaid.

Appellee was required on many occasions to personally guarantee the debts of the corporation. The corporation was very profitable, however; and appellee was never called upon to pay any corporate debt personally guaranteed by him.

There is no evidence in this record that there is such unity between appellee and the corporation that separateness of the corporation has ceased to exist. There is no evidence that the conduct of appellee as president and sole stockholder has resulted in any fraud upon or injustice to appellant or to any third party. Absent such evidence the alter ego theory is not raised.

■ It is the rule that the legal fiction of corporate entity may be disregarded where the fiction is used as a means of perpetrating fraud or is relied upon to justify wrong. This rule is an exception to the general rule which forbids disregarding corporate existence or entity and is not to be applied unless certain elements are shown. There must be such unity that the separateness of the corporation has ceased and an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice. *First Nat. Bank in Canyon v. Gamble*, 134 Tex. 112, 132 S.W.2d 100 (1939); *Sidran v. Tanenbaum*, 391 S.W.2d 93 (Tex.Civ.App.—Dallas 1965, no writ). Appellant's points are overruled.

Appellant next complains of the trial court's property division based on jury findings of a tracing of separate funds of appellee into the purchase of a residence during the marriage of the parties. One of the special issues inquired whether any of appellee's separate funds could be so traced and, conditioned on an affirmative finding thereto, the next issue requested the jury to find the amount of such traced funds. The jury found that the separate funds could be so traced, and the amount of separate funds traced was found by the jury to be $163,000.00. Appellant claims such findings are supported by no evidence and by insufficient evidence.

In order to purchase the residence a cashier's check for $263,000.00 was issued on August 3, 1976, payable to Statewide Title Company. Funding for this check was accumulated in the following manner: $100,-

000.00 was borrowed by the parties from Humphrey Company, Inc. and two loans were made on August 3, 1976 by First City Bank to the parties in the amounts of $81,000.00 and $82,000.00. The purchase of the house was consummated on August 3, 1976, using the $263,000.00 thus accumulated. On the same day, August 3, 1976, appellee sold his separate property residence, and received $169,619.79. Appellee then applied these separate proceeds to partially extinguish the debts incurred in purchasing the new house. The $81,000.00 loan from First City Bank was repaid on August 4, 1976; and $87,000.00 was repaid to Humphrey Company, Inc. on August 24, 1976, against the $100,000.00 loan. These separate funds were clearly traced from appellee, through the checking account of the parties, to the original lenders.

The tracing findings having been made by the jury, the trial court then ruled that the separate estate of appellee owned an undivided 61.9% interest in said real property and in the proceeds from the sale thereof. The 61.9% figure was based on the fact that, in accordance with the findings of the jury, that percentage of the purchase price of the property was provided from appellee's separate funds. Before the trial in the court below the property was sold, and the net proceeds from the sale were held in a certificate of deposit issued by Allied Memorial Bank in the names of both parties in the principal amount of $362,065.36.

Appellant claims that the trial court erred in holding that appellee's separate estate owned a 61.9% interest in such real property and in the proceeds from the sale thereof. Appellant argues that the evidence shows conclusively that the property was community property, the purchase having been made solely with borrowed funds obtained on community credit. Appellant relies on such cases as *Gleich v. Bongio*, 128 Tex. 606, 99 S.W.2d 881 (1937); *Bradley v. Bradley*, 540 S.W.2d 504 (Tex.Civ.App.— Fort Worth 1976, no writ).

These cases hold that property acquired on the credit of the community is community property and where a community obliga-

tion is undertaken to purchase land, and its status thereby fixed as community property, its status is not later changed into separate property by the later repayment with separate funds.

We recognize the authority of these cases. However, if the trial court erred in holding that appellee's separate estate owned a 61.9% interest in the subject property and the sale proceeds, this will not require a reversal if the overall property division was equitable.

The applicable principles are stated in McKnight, *Family Law, Annual Survey of Texas Law*, 29 SW. L.J. 67 (1975):

> In approaching the problem of property division on divorce, the court will commonly make a finding as to the character of particular property as either separate or community estate. If a mistake is made in the characterization, but the division is nonetheless equitable, the courts have treated the mistake as harmless. If the issue is merely one of the trial court's exercise of discretion, the division will not be disturbed on appeal unless it is shown that the court abused its discretion by making a manifestly unfair division. 29 SW. L.J. at 79.

As authority for the above statements, the author cites the following cases: *Law v. Law*, 517 S.W.2d 379 (Tex.Civ.App.—Austin 1974, writ dism'd); *Wilkerson v. Wilkerson*, 515 S.W.2d 52 (Tex.Civ.App.—Tyler 1974, no writ); *Gaulding v. Gaulding*, 503 S.W.2d 617 (Tex.Civ.App.—Eastland 1973, no writ).

We will now consider whether the overall property division was equitable. In this connection we will first assume that the new residence discussed above, and thus the $362,065.36, in proceeds, is community property. Appellant does not challenge appellee's right to reimbursement of the $163,000.00 of separate funds used to retire the purchase money indebtedness. Allowance of such reimbursement would leave $199,065.36 of such sale proceeds as community property, and appellant makes the specific complaint that the trial court erred in not awarding her one half thereof. However, we must consider the overall property divi-

sion, not just the division of the proceeds from the house sale. We have carefully reviewed all of the evidence relating to the community property and the value thereof. As might be expected, there is much conflict in the evidence concerning the values of various items of property. However, there is evidence that the total value of all of the community property is approximately $356,000.00 (including $199,065.36 of house sale proceeds) and that appellant received property valued at approximately $206,750.00. In addition to $57,959.55 in cash out of the house sale proceeds, she received a car valued at $10,000.00, jewelry and furs valued at $62,550.00 and furniture and furnishings valued at $76,246.00.

It seems clear to this Court that the overall property division between the parties was equitable; therefore, under the principles enunciated in the *Gaulding, Wilkerson* and *Law* cases cited above, we hold that any mistake on the part of the trial court in holding 61.9% of the house and the sale proceeds to be separate property of appellee was harmless and does not require reversal.

Based on the same evidence we hold that there was no abuse of discretion in the property division made by the trial court and overrule appellant's point claiming such an abuse of discretion.

We have carefully considered all of appellant's points of error and overrule all of them. Therefore, the judgment of the court below is affirmed.