# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10782

United States Court of Appeals
Fifth Circuit

**FILED**

April 22, 2015

Lyle W. Cayce
Clerk

STACY BARZELIS, Individually and as Representative of
the Estate of Nicholas Barzelis, Deceased,

> Plaintiff–Appellant

versus

FLAGSTAR BANK, F.S.B.; UNKNOWN PARTIES,

> Defendants–Appellees

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before REAVLEY, SMITH, and GRAVES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Stacy Barzelis appeals the dismissal of her various state-law claims against Flagstar Bank, F.S.B. ("Flagstar"), as preempted under the Home Owners' Loan Act of 1933 ("HOLA"), as well as a summary judgment on her claim under the Real Estate Settlement Procedures Act of 1974 ("RESPA"). Applying regulatory guidance from the Office of Thrift Supervision ("OTS") to divine when HOLA preemption applies, we affirm in part and reverse in part and remand.

No. 14-10782

I.

In 2007, Stacy Barzelis and her husband Nicholas Barzelis refinanced their home loan with Fairway Independent Mortgage Corporation. For the refinancing, they executed a Texas Home Equity Security Instrument ("Security Instrument") granting the bank a security interest in the property, but only Nicholas signed the promissory note ("Note"). The loan was later assigned to Flagstar.

In October 2009, Nicholas died, and Stacy submitted the death certificate to Flagstar in March 2010. She then filed for Chapter 13 bankruptcy relief, and the trustee continued to send loan payments to Flagstar on her behalf. But the bank refused them, stating that it would accept payments only from Nicholas, who had signed the Note. Stacy then sent Flagstar two Qualified Written Request, Complaint, and Dispute of Debt and Validation of Debt letters ("QWR"), asking Flagstar for information about the status of the loan and why it was refusing her payments. Flagstar replied to the first letter, but only to say that it would not supply her with the requested information because she was not a borrower under the Note, and she needed to provide "letters of authority from a probate attorney" to show that she was acting as the agent of the estate.

Flagstar began foreclosure proceedings, then Barzelis sued in state court for wrongful foreclosure. Flagstar removed to federal court, and Barzelis amended her complaint to include an array of state and federal claims, including, in relevant part, breach of contract, negligent misrepresentation, violations of the Texas Debt Collection Act ("TDCA"), and violation of RESPA. The district court dismissed all the state-law claims as preempted by HOLA and granted summary judgment to Flagstar on the RESPA claim.

2

No. 14-10782

## II.

We must decide which if any of Barzelis's state-law claims—breach of contract, negligent misrepresentation, and TDCA violations—are preempted by HOLA.[1] We review issues of federal preemption *de novo*. *Kaufman v. Allied Pilots Ass'n*, 274 F.3d 197, 200 (5th Cir. 2001). Enacted during the Great Depression, HOLA authorized the creation of federal savings associations ("FSAs") to ease tight credit conditions for home borrowers. *Fidelity Fed. Savs. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159 (1982). The act gives OTS regulatory authority to promulgate national, uniform regulations, for FSAs, that occupy the field and preempt state law. 12 U.S.C. § 1464(a); *de la Cuesta*, 458 U.S. at 159.

Under that authority, OTS set out the scope of HOLA preemption in a regulation, 12 C.F.R. § 560.2, that has the same preemptive power as a federal statute.[2] *De la Cuesta*, 458 U.S. at 153. Section 560.2 sets up a two-step framework for determining whether a state law is preempted as applied to FSAs.[3]

At the first step, courts must look to Section 560.2(b), which lists thirteen categories of laws that are explicitly preempted by HOLA. Those categories concern particular ways in which a state might regulate FSA lending operations, such as laws requiring certain disclosures or regulating interest rates. If the state law fits within one of those categories, it is preempted as applied

---

[1] It is undisputed that Flagstar is a federal savings association subject to HOLA and OTS regulation.

[2] Unlike in other contexts, here we make no presumption against preemption because there is a history of federal presence in banking regulation. *See United States v. Locke*, 529 U.S. 89, 108 (2000); *Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 956 (9th Cir. 2005).

[3] *See* Lending and Investment, 61 Fed. Reg. 50951-01, 50966–67 (Sept. 30, 1996) (explaining the framework). To the extent that the agency's statements accompanying the final rule are interpretations of its own ambiguous regulation, they are entitled to *Auer* deference. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997); *O'Hara v. Gen. Motors Corp.*, 508 F.3d 753, 760–61 (5th Cir. 2007).

No. 14-10782

to FSAs, ending the inquiry. If it is not covered by Section 560.2(b) but nonetheless affects lending, there remains a presumption that it is preempted, and courts then look to the second step in Section 560.2(c).[4] It specifies that state laws falling into certain categories[5] are not presumed preempted if they "only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes" of Section 560.2(a).[6] So, laws that have more than an incidental effect on lending and that are inconsistent with the regulation are also preempted, but the remaining state laws are not and may be applied to FSAs. Finally, where there is doubt, a law is deemed preempted. Lending and Investment, 61 Fed. Reg. at 50966–67.

## A.

Barzelis's first claim is called breach of contract, but closer examination reveals that it is actually two claims: one based on provisions of the Security Instrument and another based on the Texas Property Code. First, Barzelis alleges that Flagstar violated particular paragraphs of the Security Instrument that provide substantive protections under the contract, such as the right to discontinue acceleration. But Barzelis also avers, in her beach-of-contract claim, that, independently of the Security Instrument, Flagstar violated Texas Property Code Section 51.002(d), which mandates that mortgage servicers give debtors notice of default and provide the opportunity to cure within twenty days before initiating foreclosure.

It is important to distinguish between breach-of-contract claims based on provisions of the agreement and those based on independent statutory

---

[4] Section 560.2(a); Lending and Investment, 61 Fed. Reg. at 50966–67.

[5] The categories of state laws include contract and commercial law, real property law, certain homestead laws, tort law, and criminal law. Section 560.2(c).

[6] Section 560.2(c); Lending and Investment, 61 Fed. Reg. at 50966–67.

obligations.  It may be the case, for example, that a state law regulating interest-rate adjustments to protect borrowers is preempted by HOLA.  But that does not prevent a bank and a borrower from voluntarily agreeing to substantially the same protections in their contract, and in that case, the bank may not later invoke HOLA preemption to stop the borrower from enforcing those terms.  *See In re Ocwen Loan Serv., LLC Mortg. Serv. Litig.*, 491 F.3d 638, 643–44 (7th Cir. 2007).  By the same token, however, borrowers may not disguise state statutory violations as breach-of-contract claims to avoid preemption by relying on clauses stating that the agreement is subject to applicable law.  In both situations, courts must look not to the label placed on the claim but to the substance of the allegation to determine whether HOLA preemption applies.  *See Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 972 (N.D. Cal. 2010).

We first must examine whether Section 51.002(d) is preempted under the two-step framework.  As noted earlier, the statute requires lenders to issue a specific notice to borrowers in default, giving the opportunity to cure before the bank can issue a notice of sale.  Flagstar contends that such a requirement fits within multiple subsections of Section 560.2(b), and several appear to cover this sort of notice-of-default requirement.  Section 560.2(b)(4), for instance, preempts state laws imposing requirements on "[t]he terms of credit, . . . including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan."  The law here does just that: It specifies that a lender may foreclose only under a particular circumstance, namely, after issuing a default notice and giving an opportunity to cure.

Likewise, Section 51.002(d) sets requirements related to "[d]isclosure and advertising, including laws requiring specific statements, information, or

No. 14-10782

other content to be included" in credit documents.  Section 560.2(b)(9).  The law explicitly requires a specific notice to the borrower that he is in default, which qualifies as a credit-related document.  *Crespo v. WFS Fin. Inc.*, 580 F. Supp. 2d 614, 623 (N.D. Ohio 2008).  Each of these subsections is sufficient to conclude that Section 51.002(d) is preempted under HOLA.[7]

This analysis, however, does not implicate the breach-of-contract claims based on the parties' voluntary agreement, and the entire claim should not have been dismissed when preemption affected only one of its underlying theories.  So, though we conclude that Section 51.002(d) is preempted at the first step, we reverse the dismissal of the breach-of-contract claim insofar as it did not address the alleged breaches of the Security Instrument.

## B.

Barzelis's second claim is for common-law negligent misrepresentation, but again, we examine its substance, not its title, to determine whether it is preempted.  Claims for negligent misrepresentation deserve careful analysis because the preemption framework will sometimes depend on the particularities of the alleged misstatements.  Barzelis asserts that in its mailed notices, Flagstar negligently misrepresented the status of her loan and the foreclosure sale, and the district court concluded that, because the claim is based on alleged misstatements in disclosures contained in credit-related documents, it is preempted under Section 520.6(b)(9).  For this particular claim, we agree.

---

[7] Although no court of appeals has considered whether a similar state law is preempted by HOLA, our reading is in line with that of a number of district courts that have found preemption for similar state laws under these subsections and under Section 560.2(b)(5) and (10).  *See Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1033 (N.D. Cal. 2010) (holding California's similar default-notice statute preempted under Section 560.2(b)(4), (5), (9), and (10)); *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1185 (N.D. Cal. 2012); *Crespo*, 580 F. Supp. 2d at 623; *Parcray v. Shea Mortg. Inc.*, No. CV-09-1942, 2010 WL 1659369, *7–8 (E.D. Cal. Apr. 23, 2010); *Copeland-Turner v. Wells Fargo Bank, N.A.*, 800 F. Supp. 2d 1132, 1140–41 (D. Or. 2011).

No. 14-10782

Negligent misrepresentation—like fraud, intentional misrepresentation, and similar tort claims—relies on a generally applicable duty not to misrepresent material facts, and to that extent, the claim would typically not be preempted by HOLA.[8] Yet courts have recognized that where a negligent-misrepresentation claim is predicated not on affirmative misstatements but instead on the inadequacy of disclosures or credit notices, it has a specific regulatory effect on lending operations and is preempted.[9] Barzelis's negligent-misrepresentation theory is akin to this second kind of claim: It regards the disclosures and information in credit documents and is also preempted under HOLA. Section § 560.2(b)(9).

## C.

Third, Barzelis alleges that Flagstar violated four different provisions of the TDCA that prohibit various deceptive practices in the course of collecting a debt, including: threatening to take illegal action,[10] attempting to collect unauthorized fees,[11] mischaracterizing a debt,[12] and using other deceptive means.[13] Relying on three subsections of Section 560.2(b), the district court ruled that all four statutes are preempted under HOLA. But applying the two-step framework, we agree instead with the other courts of appeals that have considered similar consumer-protection statutes under HOLA preemption.

First, in regard to Section 560.2(b), none of the TDCA provisions at issue

---

[8] *See Ocwen*, 491 F.3d at 647; *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 417 (N.D. Cal. 2009).

[9] *See Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008); *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 972 (N.D. Cal. 2010).

[10] *Id.* § 392.301(a)(8).

[11] *Id.* § 392.303(a)(2).

[12] *Id.* § 392.304(a)(8).

[13] *Id.* § 392.304(a)(19).

falls under the enumerated categories. The TDCA prohibits various types of deceptive and abusive practices in the course of debt collection, but it is not specifically targeted at federal savings associations or even banks, and many who are not lenders qualify as debt collectors under the statute. The laws do not regulate specific terms of lending, the extension of credit, types of fees allowed, or disbursements, which are included under Section 560.2(b). Moreover, OTS reached a similar conclusion in an opinion letter interpreting HOLA's preemptive effect on a different consumer-protection statute.[14]

Nevertheless, these TDCA claims do affect lending insofar as they limit the ways in which Flagstar can collect its loans. So there is a presumption of preemption, and we must move to the second step to determine whether the statutes have more than an incidental effect or are otherwise consistent with the purposes set out in Section 560.2(a). Although it is uncertain how to measure the impact of a state law on lending, we are informed by the reasoning in the OTS opinion letter and by other courts of appeals.

We agree with the consensus,[15] concluding that similar state consumer-protection laws—those "that establish the basic norms that undergird comercial transactions"[16]—do not have more than an incidental effect on lending and thus escape preemption. The essential purpose of the TDCA is to limit coercive and abusive behavior by all those seeking to collect debts, something that does not burden lending in the same way as would a specific mandate on interest rates. Instead, it more closely resembles a generally applicable law against

---

[14] Preemption of State Laws Applicable to Credit Card Transactions, OTS Op. Letter, No. P-96-14, 1996 WL 767462, *5–6 (Dec. 24, 1996).

[15] *Ocwen,* 491 F.3d at 644–47; *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 557–58 (4th Cir. 2013); *Molosky v. Washington Mut., Inc.*, 664 F.3d 109, 116 (6th Cir. 2011).

[16] Preemption of State Laws Applicable to Credit Card Transactions, OTS Op. Letter, No. P-96-14, 1996 WL 767462, at *5.

No. 14-10782

deceptive trade practices, governing behavior at the margins of banking and lending.   Additionally, the law is consistent with "the safe and sound operation of federal savings associations."   Section 560.2(a).   As a result, the statute overcomes the presumption, and the claims are not preempted under HOLA.

III.

Finally, and separately from the preemption issues, we consider the summary judgment on Barzelis's RESPA claim under 12 U.S.C. § 2605(e). Under the statute, lenders are required to respond timely to a borrower's QWR within a certain number of days, and failure to do so subjects the lender to liability.  § 2605(e), (f).  The district court granted summary judgment because Barzelis did not qualify as the "borrower" under the statute and had not shown she was acting as the borrower's agent.  Because the only signatory to the Note was Nicholas Barzelis, and because Stacy had produced no evidence that she was the administrator of his estate, the court concluded that Flagstar was not required to respond to the QWRs from Stacy.  But that analysis fails to account for the legal effect of Nicholas's death under Texas law, which has an impact on Stacy's legal status under the Note.

Nicholas died intestate well before the QWRs were sent.  And though he was the only signatory on the Note when he was alive, it was signed during his marriage to Stacy and was secured by their homestead.  Accordingly, the debt was presumptively a community debt.[17]  Similarly, the house was community property at the time of death.[18]  Therefore, upon Nicholas's death, the community estate, including the property, passed to Stacy subject to the

---

[17] *Gleich v. Bongio*, 128 Tex. 606, 611 (1937); *Wierzchula v. Wierzchula*, 623 S.W.2d 730, 732 (Tex. App.—Houston [1st Dist.] 1981, no writ).

[18] TEX. FAM. CODE § 3.003; *Richardson v. Richardson*, 424 S.W.3d 691, 697 (Tex. App.– El Paso 2014, no pet.).

community debt of the Note,[19] and no administration was necessary for the community property under Texas law.[20]  Consequently, under Texas law, Stacy, as the survivor to her husband's interest in the property subject to their community debt, was the successor-debtor on the Note and was the legal borrower.[21]

Because the district court did not consider the legal implications of Texas's community-property system and estate laws as they relate to Barzelis's borrower status, we reverse the summary judgment on the RESPA claim.  In doing so, we make no comment on other aspects of that claim, such as whether Barzelis met any requirement of establishing her status as borrower to Flagstar; those are best considered in the first instance in the district court.

The judgment is AFFIRMED in part and REVERSED in part and REMANDED for further proceedings as needed.  We place no limit on the matters that the court may address, nor do we suggest what rulings the court should make on remand.

---

[19] TEX. ESTATES CODE § 201.003; *Dakan v. Dakan*, 125 Tex. 305, 317 (1935) ("It is, however, the rule in this state 'that the community estate passes charged with the debts against it.'").

[20] TEX. ESTATES CODE § 453.002; *Shepherd v. Ledford*, 926 S.W.2d 405, 412–15 (Tex. App.–Fort Worth 1996), *aff'd*, 962 S.W.2d 28 (Tex. 1998).

[21] *Cf. Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 796–97 (E.D. Pa. 2014) (holding that the surviving spouse of the borrower could not maintain a RESPA claim in her individual capacity because she never assumed the deceased's loan).