RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

TARA L. KEEN,

> *Plaintiff/Counter-Defendant-Appellant*,

*v.*

ROBERT C. HELSON,

> *Defendant/Counter-Plaintiff-Appellee*,

OCWEN LOAN SERVICING, LLC,

> *Defendant-Appellee*,

BANK OF NEW YORK MELLON TRUST COMPANY, N.A., formerly known as The Bank of New York Trust Company, N.A., as successor to J.P. Morgan Chase Bank, N.A., as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass Through Certificates Series 2005-RP3,

> *Third-Party Defendant-Appellee*.

No. 18-6035

─────────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:17-cv-00982—William L. Campbell, Jr., District Judge.

Decided and Filed:  July 18, 2019

Before:  GUY, THAPAR, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Kerry Dietz, David Tarpley, David Kozlowski, LEGAL AID SOCIETY OF MIDDLE TENNESSEE & THE CUMBERLANDS, Nashville, Tennessee, for Appellant. Edmund S. Sauer, Brian R. Epling, BRADLEY ARANT BOULT CUMMINGS LLP, Nashville, Tennessee, for Appellee Ocwen Loan Servicing.

---

**OPINION**

---

THAPAR, Circuit Judge.  To sue someone, you must have a cause of action.  And you only have a cause of action under a federal statute if the statute's text provides you one.  The Real Estate Settlement Procedures Act (RESPA) creates a cause of action but says that only "borrower[s]" can use it.  12 U.S.C. § 2605(f).  A "borrower" is someone who is personally obligated on a loan—i.e., someone who is actually borrowing money.  Tara Keen does not fit that description, so she does not have a cause of action under RESPA.  Instead, she will have to vindicate her rights in state court under state law.

I.

This case turns on the difference between loans and mortgages.  So we need to start by explaining what they are.

When you buy a house, you usually need a loan and a mortgage.  The loan is a contract between you and the lender.  The lender gives you money now so you can afford the house, and, in return, you agree that you will pay back that amount (plus interest) on a set schedule.  *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1033–34 (2019).  If you fail to pay on time, the lender can sue you to get back what you owe.  But litigation can be time-consuming and expensive.  So most lenders want extra assurance that you will pay the loan back.  That is where the mortgage comes in.  Under a mortgage, you give the lender a legal interest in the house such that, if you do not pay back the loan on schedule, the lender can foreclose.  *Id.*; *see also* Restatement (Third) of Property: Mortgages § 1.1 (Am. Law Inst. 1997).  By foreclosing, the lender can take possession of your house—either for themselves or to sell it to someone else in order to satisfy the unpaid debt you owe.  *Black's Law Dictionary* (11th ed. 2019) (defining "foreclosure").

Put simply, a loan obligates you to pay the lender back, while a mortgage gives the lender the ability to take your house if you fail to meet that obligation.  Thus, although most people get

both a loan and a mortgage when they buy a house, the two are separate agreements setting forth different rights and obligations.

Tara and Nathan Keen, like most of us, got a loan and took out a mortgage when they bought their house.  Both of them signed the mortgage.  But only Nathan signed the loan.[1]  So only Nathan got money from the lender, and only Nathan promised to pay it back.  That is not a minor technicality.  Rather, this fact had legal and practical impact.  For example, if Nathan defaulted on the loan, and the foreclosure sale of the house was not enough to satisfy the debt, then the lender could only go after *Nathan*'s personal assets, not Keen's.  Nathan was the one on the hook.  Indeed, the mortgage made this abundantly clear.  It said that anyone "who co-signs this [mortgage] but does not execute the [loan]"—i.e., Keen—"is not personally obligated to pay the sums secured by this [mortgage]."  R. 34-2, Pg. ID 455.

The pair later divorced, and Nathan gave Keen full title to the house.  He died shortly afterwards.  Although Keen was not legally obligated to make payments on the loan after Nathan died, she made payments anyway so she could keep the house.  But she later ran into financial trouble and fell behind on those payments.  Hoping to prevent foreclosure, Keen contacted the loan servicer, Ocwen Loan Servicing, LLC.  She had a number of discussions with Ocwen representatives and submitted several applications for different forms of relief.  Ultimately, those attempts failed.  Ocwen proceeded with the foreclosure, and Keen's house was sold to a third-party buyer—Robert Helson.

Soon after foreclosure, Keen sued both Ocwen and Helson under federal and state law.  Her only claims relevant to this appeal alleged that Ocwen violated the Real Estate Settlement Procedures Act (RESPA).  *See* 12 U.S.C. § 2601 *et seq*.  RESPA requires that loan servicers, like Ocwen, take certain steps when a borrower asks for options to avoid foreclosure.  *Id.* § 2605; *see also* 12 C.F.R. §§ 1024.31, 1024.41.  Keen alleged that Ocwen failed to properly review her requests before it foreclosed on her house.

---

[1]We mean no disrespect by using Nathan's first name.  We use it here only to distinguish between Tara and Nathan Keen.  Throughout the rest of the opinion, we refer to Tara Keen as "Keen."

The district court dismissed Keen's RESPA claims.  RESPA's cause of action extends only to "borrower[s]."  12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this section shall be liable to the borrower . . . .").  And the district court concluded that Keen was not a "borrower" because she was never personally obligated under the loan agreement.  Keen appealed, and we review de novo.  *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).

## II.

The only issue on appeal is whether Keen has a cause of action under RESPA.  Although courts have called this question "statutory standing" or "prudential standing," those phrases are misnomers.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–28 & n.4 (2014).  To sue in federal court, a plaintiff must have standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citing U.S. Const. art. III, § 2).  If the plaintiff lacks standing, then the court lacks jurisdiction.  In contrast, the absence of a cause of action is a *merits* issue that does not implicate the court's constitutional power to decide the case.  *Lexmark*, 572 U.S. at 128 n.4; *see also In re Capital Contracting Co.*, 924 F.3d 890, 893, 895 (6th Cir. 2019).  Determining whether the plaintiff has a cause of action is a "straightforward question of statutory interpretation."  *Lexmark*, 572 U.S. at 129.  We ask "whether [the plaintiff] falls within the class of plaintiffs whom Congress has authorized to sue," and we answer that question using the "traditional tools" of statutory interpretation.  *Id.* at 127–28.

RESPA only authorizes "borrower[s]" to sue.  12 U.S.C. § 2605(f).  And we cannot extend RESPA's cause of action any broader than Congress did.  Causes of action "to enforce federal law must be created by Congress[,]" not courts, "no matter how desirable th[ey] might be as a policy matter, or how compatible with the statute."  *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001); *see also Lexmark*, 572 U.S. at 128.  So we start with the text and ask whether Keen is a "borrower." If Keen is not a "borrower," then she does not have a cause of action.

## III.

RESPA does not define "borrower," so we give the term its ordinary meaning.  *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012).  And the distinction between

loans and mortgages is key to interpreting that ordinary meaning. To briefly recap: under a loan, the lender gives you money now, and you promise to pay it back later. A mortgage is a separate document that provides extra assurance to the lender that you will pay them back—if you do not, the lender can take your house. Intuitively, then, a "borrower" is someone who has *borrowed* money from a lender and promised to pay it back. That means only people who are personally obligated under a loan—those who signed or assumed it—can be "borrower[s]" under RESPA. Conversely, signing a *mortgage*, or owning a home subject to one, does not make you a "borrower." As shown below, dictionaries and the statutory context both bear out this intuitive meaning.

When interpreting the words of a statute, contemporaneous dictionaries are the best place to start. Here, that means dictionaries from around 1974, when Congress originally enacted RESPA and used the term "borrower," and 1990, when Congress enacted § 2605 and continued to use the term. Pub. L. No. 93-533, 88 Stat. 1724, 1726 (1974); Cranston-Gonzalez National Affordable Housing Act, Pub. L. No. 101-625, 104 Stat. 4079, 4409 (1990). These dictionaries all show that a "borrower" is someone personally obligated under a loan. Indeed, the *American Heritage* definition of "borrow" specifically tied the term to loans: "[t]o obtain or receive (something) *on loan* with the promise or understanding of returning it or its equivalent." *American Heritage Dictionary of the English Language* 220 (3d ed. 1992) (emphasis added). And in a dictionary published in 1971, Merriam-Webster defined the intransitive form of "borrow" as "to receive, appropriate, or derive something (as by way of a loan) from another." *Webster's Third New International Dictionary* 256 (3d ed. 1971). Other dictionaries do not use the word "loan" but convey the same idea. In a 1977 volume, Merriam-Webster defined "borrow" as "to receive with the implied or expressed intention of returning the same or an equivalent." *Merriam Webster's New Collegiate Dictionary* 129 (1st ed. 1977). In a later edition published in 1994, it restated that definition and included the alternative "to borrow (money) with the intention of returning the same plus interest." *Merriam Webster's Collegiate Dictionary* 133 (10th ed. 1994); *see also Webster's New World Dictionary of American English* 162 (3d ed. 1988) (defining "borrow" as "to take or receive (something) with the understanding that one will return it or an equivalent"); *Random House Unabridged Dictionary* 243 (2d ed. 1993).

Lawyers defined the term "borrow" the same way, with (predictably) added verbiage: "to solicit and receive from another any article of property, money or thing of value with the intention and promise to repay or return it or its equivalent." *Black's Law Dictionary* 185 (6th ed. 1990); *Black's Law Dictionary* 167 (5th ed. 1979) (same); *see also Merriam Webster's Dictionary of Law* 58 (1996). The same editions of *Black's* also defined "borrower" and specifically tied the word to loans. *See Black's Law Dictionary* 185 (6th ed. 1990); *Black's Law Dictionary* 167 (5th ed. 1979) (both defining "borrower" as "[h]e to whom a thing or money *is lent* at his request" (emphasis added)). In sum, contemporaneous dictionaries all point to a loan-based interpretation of "borrower" in § 2605(f).

Another tool of interpretation is the context provided by the rest of the statute. Statutory interpretation is a "holistic endeavor"—the structure and wording of other parts of a statute can help clarify the meaning of an isolated term. *United Sav. Assoc. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). This statutory context stacks up against Keen. Section 2605's requirements generally apply to "federally related mortgage *loan*[*s*]," not "federally related *mortgages*." *See, e.g.*, 12 U.S.C. §§ 2605(a)–(c) (emphasis added).**2** And RESPA defines that term to mean loans, not the mortgages that secure them. *Id.* § 2602(1)(A) (defining "federally related mortgage loan" as "any loan . . . which . . . *is secured by* a first or subordinate lien on residential real property . . ." (emphasis added)). Thus, the requirements over which "borrowers" can sue apply only to loans, not to mortgages. That suggests only a borrower on a *loan* can sue under RESPA.

Similarly, we can figure out what "borrower" means in § 2605(f) by looking to how the word is used in other parts of the statute. "[I]dentical words used in different parts of the same statute are presumed to have the same meaning." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006). The term "borrower" frequently appears throughout RESPA, each time referring to a relationship with a lender under the terms of a loan. For instance, § 2605

---

**2**The 2010 amendments added subsections (k) and (l) which, unlike the rest of § 2605, refer to "mortgages" rather than "mortgage loans," but this seems to be mere shorthand. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat 1376, 2182–83 (2010). After all, subsection (k) constrains a "servicer of a federally related mortgage," but a mortgage itself requires no servicing—only a loan does. *See* 12 U.S.C. § 2605(i)(3) (constraining the term "servicing" to loans). And subsection (l) speaks of "property securing the federally related mortgage," even though a property secures a loan (via a mortgage).

itself uses the word "borrower" again to define another term: it defines "servicing" as "receiving any scheduled periodic payments from a *borrower* pursuant to the terms of any loan . . . and making the payments of principal and interest . . . with respect to the amounts received from the *borrower* as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3) (emphasis added); *see also, e.g.*, *id.* §§ 2604(b)(4), 2605(b)–(c), 2609(a)–(c). Keen points to § 2604(c), which does imply that "borrower[s]" are generally homeowners. But even that provision discusses obligations that "lender[s]" have to "borrowers." *Id.* § 2604(c). These provisions together provide additional evidence that the word "borrower" in § 2605(f) means what it sounds like. "Borrowers" must be personally obligated on a loan, regardless of whether they signed a mortgage or own a home.

Congress could have said that "any person" injured by a RESPA violation could sue. *Cf.* 42 U.S.C. § 3613(a)(1)(A). It could have said that "mortgagors" or "homeowners" could sue. But instead, Congress said that only "borrowers" could sue. And the ordinary meaning of "borrower" is someone who has taken a lender's money and promised to pay it back. That means a "borrower" under § 2605(f) is someone who is personally obligated under a "federally related mortgage loan." 12 U.S.C. § 2602(1).[3]

## IV.

Rather than adopt the plain meaning of the word "borrower," Keen would have us stretch the word beyond its breaking point, relying on the liberal construction canon, definitions in agency regulations, and policy considerations. We address each argument in turn.

*Liberal construction canon*. First, Keen relies on the so-called liberal construction canon: "remedial statute[s]" like RESPA should be "construed broadly to effectuate [their] purposes."

---

[3]Our interpretation is consistent with other circuit court cases on this issue. *See Barzelis v. Flagstar Bank, F.S.B.*, 784 F.3d 971, 977 (5th Cir. 2015) (explaining that the plaintiff's "legal status under the [loan]" determined whether or not she was a "borrower" under § 2605(f)); *Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868, 874 (11th Cir. 2010) (holding that plaintiff failed to establish that she had a cause of action under RESPA because she was not a borrower). Keen principally relies on four district court cases: *Washington v. Green Tree Servicing LLC*, Case No. 1:15-cv-354, 2017 WL 1857258 (S.D. Ohio May 5, 2017); *Farber v. Brock & Scott, LLC*, No. CV TDC-16-0117, 2016 WL 5867042 (D. Md. Oct. 6, 2016); *Frank v. J.P. Morgan Chase Bank, N.A.*, Case No. 15-cv-05811-LB, 2016 WL 3055901 (N.D. Cal. May 31, 2016); and *Washington v. Am. Home Loans*, No. CV 09-08213 DMG (RZx), 2011 WL 11651320 (C.D. Cal. Nov. 12, 2011). We agree with the district court here that these cases are unpersuasive and distinguishable.

*Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (per curiam) (citing *In re Carter*, 553 F.3d 979, 985–86 & n.5 (6th Cir. 2009)).  Although this court has invoked the liberal construction canon in prior RESPA cases, the canon has a number of problems.  First, it is premised on two mistaken ideas:  (1) that statutes have a singular purpose and (2) that Congress wants statutes to extend as far as possible in service of that purpose.  Instead, statutes have many competing purposes, and Congress balances these competing purposes by negotiating and crafting statutory text.  *Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 135–36 (1995).  Courts should not expand that text on the notion that "Congress 'must have intended' something broader."  *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794 (2014) (citation omitted); *see generally* Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109 (2010).  Further, even assuming the liberal construction canon is legitimate and should play a role in the interpretive process, its trigger—a "remedial statute"—is hopelessly vague.  What exactly is a "remedial" statute?  Every statute is "remedying" some sort of problem.  Given this vagueness, courts can invoke the canon on a whim as an excuse for "reaching the result the[y] wish[] to achieve."  Antonin Scalia, *Assorted Canards of Contemporary Legal Analysis*, 40 Case W. Res. L. Rev. 581, 586 (1990).

For all of these reasons, the Supreme Court has called the liberal construction canon the "last redoubt of losing causes."  *Newport News*, 514 U.S. at 135.  And indeed, "last" is where it belongs in the interpretive process.  A court should only invoke the liberal construction canon after it has exhausted other, more helpful (and more legitimate) tools of interpretation.  *Id.*; *see also Arangure v. Whitaker*, 911 F.3d 333, 340–42 (6th Cir. 2018).  In this case, those tools answer the question before us.  So expanding the term "borrower" to include Keen would not be "broadly construing" RESPA—it would be rewriting it.

*Regulations*.  Keen also supports her interpretation by pointing to recent regulations from the Consumer Financial Protection Bureau (CFPB).  These regulations define "borrower" in § 2605(f) to include "successors in interest"—i.e., "a person to whom an ownership interest in a property securing a mortgage loan . . . is transferred from a borrower."  12 C.F.R. § 1024.30; Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act

(Regulation X) and the Truth in Lending Act (Regulation Z), 81 Fed. Reg. 72,160-01, 72,167–68 (October 19, 2016) (codified at 12 C.F.R. pts. 1024 & 1026). Since Nathan transferred his interest in the house to Keen as part of their divorce, Keen seems to meet this definition. But she acknowledges that these regulations do not apply to her directly because they became effective in April 2018, after the events that led to her lawsuit. 12 C.F.R. § 1024.30; 81 Fed. Reg. 72,160-01. And she does not argue that any sort of deference doctrine applies. Instead, she relies on the CFPB regulations solely as persuasive authority. But when, as here, the text is clear, that is the end of the matter. Ancillary persuasive authority is irrelevant. *Cf. Pereira v. Sessions*, 138 S. Ct. 2105, 2113 (2018) (explaining that when the statute "supplie[s] a clear and unambiguous answer to the interpretive question at hand[,] . . . that is the end of the matter" (internal quotation marks and citation omitted)).

*Policy.* Finally, Keen argues that our interpretation would lead to RESPA violations going unremedied—primarily because no one in a "non-recourse" state would be able to sue under RESPA. But that argument misinterprets what we now hold. To elaborate: in "non-recourse" states, if a home loan borrower defaults, then the lender can only go after the home itself. If the home is not worth enough to fully cover the amount the borrower owes, then the lender is simply out of luck. *See Black's Law Dictionary* (11th ed. 2019) (defining "nonrecourse"). In contrast, in "recourse" states, the lender is able to go after the borrower's personal assets too. Keen argues that our interpretation of "borrower" would mean that *no one* would be able to sue for RESPA violations in non-recourse states because no one would have personal assets at stake. But our interpretation turns on whether the would-be plaintiff is personally obligated to repay the loan, *not* whether lenders can go after her personal assets to recover on that obligation. If someone is personally obligated to repay a loan, she is a borrower, whether or not state law permits the lender to recover her personal assets. The personal legal obligation is all that matters.

Of course, by limiting RESPA's cause of action to "borrowers," Congress limited the number of people that can sue. But courts are not at liberty to rewrite a statute just because they believe that doing so would better effectuate Congress's purposes. As the Supreme Court recently stated in construing RESPA itself, every statute aims "not only to achieve certain ends,

but also to achieve them by particular means," and "[v]ague notions of statutory purpose provide no warrant for expanding" those chosen means. *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 637 (2012). This is especially true where such an expansion would entitle a whole new class of people to sue. *Lexmark*, 572 U.S. at 128 (citing *Alexander*, 532 U.S. at 286–87). In any event, Congress had a logical reason to draw a line between loans and mortgages. "Congress may well have chosen to treat security-interest enforcement differently from ordinary debt collection in order to avoid conflicts with state nonjudicial foreclosure schemes." *Obduskey*, 139 S. Ct. at 1037. State laws often "provide various protections designed to prevent sharp collection practices and to protect homeowners," and imposing a federal scheme on top could create conflicting obligations and end up doing homeowners more harm than good. *Id.* Indeed, Keen brought several state-law claims in this very case. Though her RESPA claims end here, she will be free to pursue those state-law claims in Tennessee state court.

\* \* \*

The district court correctly concluded that Keen does not have a cause of action under RESPA because she is not a "borrower" and therefore properly dismissed her claims.

We affirm.