<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000060
16-JUL-2025
07:56 AM
Dkt. 98 OP**</span>

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER
THE POOLING AND SERVICING AGREEMENT DATED AS OF DECEMBER 1,
2006, GSAMP TRUST 2006-FM3, Plaintiff-Appellee,
v.
DALE SCOTT WINTERS; DALE SCOTT WINTERS, TRUSTEE UNDER THAT
CERTAIN UNRECORDED REVOCABLE LIVING TRUST DATED AUGUST 30, 1993,
MADE BY DALE SCOTT WINTERS, WITH FULL POWERS TO SELL, MORTGAGE,
LEASE OR OTHERWISE DEAL WITH THE LAND, AS TO AN UNDIVIDED 1/2
INTEREST; and DEPARTMENT OF TAXATION, STATE OF HAWAIʻI,
Defendants-Appellees, and JOHN and MARY DOES 3-10, Defendants
and
EILEEN MARIE WINTERS; EILEEN MARIE WINTERS TRUSTEE UNDER THAT
CERTAIN UNRECORDED REVOCABLE LIVING TRUST DATED AUGUST 30, 1993,
MADE BY EILEEN MARIE WINTERS, WITH FULL POWERS TO SELL,
MORTGAGE, LEASE OR OTHERWISE DEAL WITH THE LAND,
AS TO AN UNDIVIDED 1/2 INTEREST, Defendant-Appellant

—————

EILEEN MARIE WINTERS, TRUSTEE UNDER THAT CERTAIN UNRECORDED
REVOCABLE LIVING TRUST DATED AUGUST 30, 1993, MADE BY EILEEN
MARIE WINTERS, WITH FULL POWERS TO SELL, MORTGAGE, LEASE OR
OTHERWISE DEAL WITH THE LAND, AS TO AN UNDIVIDED 1/2 INTEREST,
Defendant/Counterclaimant-Appellant,
v.
DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE UNDER
THE POOLING AND SERVICING AGREEMENT DATED AS OF DECEMBER 1,
2006, GSAMP TRUST 2006-FM3, Plaintiff/Counterclaim
Defendant-Appellee, and DOES 1-10, Counterclaim-Defendants

NO. CAAP-22-0000060

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CC111000093)


JULY 16, 2025


NAKASONE, CHIEF JUDGE, HIRAOKA AND WADSWORTH, JJ.


OPINION OF THE COURT BY HIRAOKA, J.

**Deutsche Bank** National Trust Company nonjudicially foreclosed a residential mortgage on property owned by **Eileen** Marie Winters and Dale Scott Winters, as trustees of their respective revocable living trusts.  Deutsche Bank purchased the property at the foreclosure auction.  It then sued the Winterses — individually, not as trustees — for ejectment and other relief. Deutsche Bank amended its complaint and identified the Winterses, as trustees of their respective revocable living trusts, as defendants.  **Eileen**, as trustee, counterclaimed for wrongful foreclosure and quiet title, among other things.  The Circuit Court of the Fifth Circuit granted partial summary judgment for Deutsche Bank on its claim for ejectment and on Eileen's counterclaims for wrongful foreclosure and quiet title, and dismissed Eileen's other counterclaims.[1]  Eileen appeals from the January 18, 2022 *Final Judgment* for Deutsche Bank.[2]

We hold that the Circuit Court erred by dismissing Eileen's counterclaims and granting summary judgment for Deutsche Bank.  Eileen's counterclaims, viewed in the light most favorable

---

[1]    The Honorable Kathleen N.A. Watanabe presided.

[2]    Dale Scott Winters isn't a party to this appeal.

to her, alleged facts which entitled her to legal relief. Eileen's opposition to Deutsche Bank's motion for partial summary judgment, viewed in the light most favorable to her, created genuine issues of material fact about whether Deutsche Bank and its agents and predecessor in interest breached the Winterses' mortgage, breached Eileen's payment plan, and violated state and federal law. We vacate the Final Judgment in part as to Eileen, individually and as trustee, and remand for further proceedings.

## I. BACKGROUND

Deutsche Bank sued the Winterses on May 25, 2011. The complaint alleged that Deutsche Bank had purchased property in Kapaʻa, Kauaʻi in a nonjudicial foreclosure, and sought to eject the Winterses from the property. Deutsche Bank amended its complaint on December 30, 2014. The amended complaint added claims for foreclosure, unjust enrichment, and an equitable lien on the Kapaʻa property.

On October 12, 2020, the Circuit Court granted Deutsche Bank's motion to identify "Eileen Marie Winters, Trustee under that certain unrecorded Revocable Living Trust dated August 30, 1993" as a defendant. Eileen as trustee answered and counterclaimed for (1) wrongful nonjudicial foreclosure; (2) unfair and deceptive acts and practices in violation of Hawaii Revised Statutes (**HRS**) § 480-2 (**UDAP**); (3) rescission under the federal Truth in Lending Act, 15 U.S.C. §§ 1601, et seq. (**TILA**); (4) violation of the federal Real Estate Settlement

3

Procedures Act, 12 U.S.C. §§ 2601, et seq. (**RESPA**); (5) breach of contract; and (6) quiet title.

Deutsche Bank moved to dismiss counts 2-5 of the counterclaim. The Circuit Court granted the motion. Deutsche Bank then moved for partial summary judgment on its claim for ejectment and on counts 1 (wrongful foreclosure) and 6 (quiet title) of Eileen's counterclaim. The Circuit Court granted the motion. The Final Judgment was entered. This appeal followed. Eileen contends the Circuit Court erred by granting Deutsche Bank's motion to dismiss and motion for partial summary judgment.

## II. STANDARDS OF REVIEW

### A.     Motion to Dismiss

We review a ruling on a motion to dismiss de novo. Bank of Am., N.A. v. Reyes-Toledo, 143 Hawai'i 249, 263, 428 P.3d 761, 775 (2018), overruled on other grounds by Wilmington Sav. Fund Soc'y, FSB v. Domingo, 155 Hawai'i 1, 556 P.3d 347 (2024). We assume the facts alleged in Eileen's counterclaim are true and view them in the light most favorable to Eileen to see if they warrant relief under any legal theory. See id. at 256-57, 428 P.3d at 768-69.

### B.     Motion for Summary Judgment

We review a grant of summary judgment de novo. Pflueger, Inc. v. AIU Holdings, Inc., 152 Hawai'i 260, 265, 526 P.3d 237, 242 (2023). Deutsche Bank had the burden to establish the material facts, show there is no genuine issue as to any of them, and explain why it is entitled to a judgment as a matter of

4

law.  Id.  A fact is material if it would establish or refute an element of a cause of action or defense.  Id.  We view the evidence in the light most favorable to Eileen.  Id.

### III. DISCUSSION

**A.    The Circuit Court erred by dismissing Eileen's counterclaim counts 2-5.**

Counts 2-5 of Eileen's counterclaim alleged UDAP, violation of TILA and RESPA, and breach of contract.  It made the following allegations which, for this appeal, we deem true and view in the light most favorable to Eileen:

Eileen created her revocable living trust (**RLT**) in 2002 and transferred title to her Kapa'a home to herself as trustee. She refinanced debt on her home in 2006 and signed a mortgage, but the mortgage did not identify her as a trustee or name her RLT as a mortgagor.[3]  The lender, **Fremont**, failed to deliver two completed and signed notice-of-right-to-cancel documents at the closing, as required under TILA.

In February 2008 Fremont informed Eileen her loan was being transferred to **Wells Fargo** and she would receive written instructions for making future payments.  Eileen didn't receive instructions.  She called Wells Fargo.  She was told Wells Fargo did not own her loan.  She called Fremont.  She was told to make her March 2008 payment over the phone.  She did.  That happened

---

[3]    The mortgage identified the "Borrower" as "Dale Scott Winters and Eileen Marie Winters, husband and wife, as tenants by the entirety."  We express no opinion about the legal effect of the mortgage's failure to name Eileen and Dale Scott Winters as trustees of their respective revocable living trusts.

again in April 2008.  In May 2008 Fremont informed Eileen it was closing and would not accept further payments.  Eileen did not receive instructions for making her May 2008 payment.

In June 2008 **Litton** informed Eileen it was the new loan servicer, Wells Fargo owned her loan, she was in default, and she needed to call to get the payoff amount.  Eileen left messages at the phone number she was given, but never received a return call.

Eileen was able to contact Litton in August 2008.  She signed a **Repayment Plan Agreement** on August 27, 2008, and wired the required $5,000 initial payment.  A few days later, Litton informed her it was proceeding with a foreclosure and keeping her initial payment because it was $100 less than required.

Litton also force-placed property insurance on the Kapaʻa property and charged the premium to the Winterses' loan, even though the property was insured.  Litton verbally quoted a reinstatement amount, but never verified it in writing.  Litton also told Eileen to apply for a loan modification.  Eileen did so by fax.

On December 16, 2008, Eileen faxed and mailed a letter disputing the debt and requesting an accounting and the name of the original creditor.  She never received the information, in violation of RESPA.  Litton's foreclosure counsel sent a letter telling Eileen she had to dispute her debt in writing by December 17, 2008.

In January 2009 Litton informed Eileen her house would be sold at auction in March.  Eileen called Litton's counsel.

She requested a payoff number and an accounting. She followed up in writing. Litton's counsel told Eileen her house was scheduled for auction in two weeks.

By letter dated January 10, 2009, Litton informed Eileen her loan could not be modified. But in early February 2009 Litton told Eileen it had no record of receiving loan modification documents, and she should resubmit them. In late February 2009, Litton's counsel gave Eileen a written reinstatement amount that was "almost double any previous quote[.]"

On June 24, 2009, Eileen exercised her TILA rescission right. She received no response. Deutsche Bank proceeded with a nonjudicial foreclosure, sold the Winterses' house to itself, and recorded a quitclaim deed on August 30, 2010.

Deutsche Bank's motion to dismiss argued that Eileen lacked standing to assert the UDAP, TILA, RESPA, and breach-of-contract claims because they were based on loan documents she signed individually, not as trustee of her RLT. Deutsche Bank alternatively argued the claims were time-barred.

**(1)** Count 2 alleged UDAP. A UDAP claim may only be brought by a consumer. HRS § 480-2(d) (2008). A "consumer" is "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." HRS § 480-1 (2008).

Deutsche Bank argues Eileen's RLT is not a "natural person," citing Association of Apartment Owners of Newtown Meadows v. Venture 15, Inc., 115 Hawaiʻi 232, 252, 167 P.3d 225, 245 (2007) (holding that an unincorporated association is not a "consumer" under HRS § 480-1). But a trust is not comparable to an unincorporated association; it is an instrument creating a relationship. HRS § 554A-1 (2018), repealed by 2021 Haw. Sess. Laws Act 32, § 9 at 92; HRS § 554D-1104 (Supp. 2021).

Eileen's counterclaim alleged she was the trustee holding title to her Kapaʻa home under her RLT when the loan documents, including the mortgage that encumbered the home, were executed. If she were the RLT's beneficiary, she would be the real party in interest and have standing to maintain a claim for unfair or deceptive acts and practices that affected her RLT's ownership of and title to her home. Tradewinds Hotel, Inc. v. Cochran, 8 Haw. App. 256, 265, 799 P.2d 60, 66 (1990) (noting general rule that a trustee having the right sought to be enforced is the real party in interest). Deutsche Bank did not show that Eileen was not the beneficiary of her RLT. Viewed in the light most favorable to Eileen, her counterclaim alleged standing to assert the UDAP claim.

Deutsche Bank argues Eileen's UDAP claim was time-barred. A consumer suit under HRS § 480-13(b) (2008) must be filed "within four years after the cause of action accrues[.]" HRS § 480-24 (Supp. 2016). The last unfair or deceptive act or practice alleged in the counterclaim was the recording of

Deutsche Bank's quitclaim deed on August 30, 2010. A UDAP action had to have been filed by August 30, 2014. Eileen's counterclaim wasn't filed until November 25, 2020. But Eileen argues her counterclaim relates back to May 25, 2011, when Deutsche Bank's complaint was filed.

HRS § 657-3 (2016) concerns counterclaims. It provides, in relevant part:

> (a) In the cases enumerated in subsection (b), . . . any . . . statute of limitations, shall apply to a claim stated as a counterclaim against an opposing party in the same manner as if an action thereon had been commenced at the time when the opposing party commenced the opposing party's action . . . .
>
> (b) Subsection (a) shall apply if the claim stated as a counterclaim:
>
> . . . .
>
> (2) Arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.

Citing <u>Mauian Hotel, Inc. v. Maui Pineapple Co.</u>, 52 Haw. 563, 567, 481 P.2d 310, 313-14 (1971) (applying Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 15(c) concerning amendment of a pleading), Deutsche Bank argues that "counterclaims, as with all other claims, will relate back only if they arose out of a situation previously described in timely pleadings." That statement in <u>Mauian Hotel</u> was dicta; the claim at issue in that case was third-party defendant Napili-Kai's amended answer to the third-party complaint. The third-party complaint alleged that third-party defendant Napili-Kai was liable for third-party defendant Austin-Smith's negligent design of a dam at Napili-

Kai's request. Napili-Kai's amended answer asserted a new cross-claim against Austin-Smith for Napili-Kai's own property damage, which was not a subject of the third-party complaint. The supreme court ultimately held that Austin-Smith was estopped from pleading the statute of limitations as a defense.

HRS § 657-3(b)(2), not HRCP Rule 15(c), applies here. Deutsche Bank's complaint alleged that Eileen and Dale Scott Winters were "remaining on the property as trespassers and/or uninvited guests and lessees" after Deutsche Bank sold the Winterses' property to itself in a nonjudicial foreclosure. It was reasonably foreseeable that Eileen would defend against the ejectment claim by claiming the nonjudicial foreclosure upon which it was based was unfairly and deceptively engineered by Deutsche Bank and its agents and predecessors in interest. See Kondaur Cap. Corp. v. Matsuyoshi, 136 Hawaiʻi 227, 241, 361 P.3d 454, 468 (2015) (noting, in ejectment action where plaintiff obtained title after non-judicial foreclosure, "the strength and validity of Kondaur's title is unavoidably intertwined with the validity of the foreclosure sale").

Deutsche Bank apparently realized this; its motion for partial summary judgment stated it "commenced this action in May 2011 to *confirm the validity of the nonjudicial foreclosure* and obtain a writ of ejectment." (Emphasis added.) Thus, the Winterses' loan and mortgage, alleged default, Litton's alleged breach of the mortgage and the Repayment Plan Agreement, and the validity of Deutsche Bank's nonjudicial foreclosure were

10

unavoidably intertwined with the subject matter of Deutsche Bank's complaint. The complaint was filed before Eileen's UDAP claim became time-barred. The counterclaim relates back under HRS § 657-3(b)(2). The Circuit Court erred by dismissing counterclaim count 2.

**(2)** Count 3 alleged TILA violations. Deutsche Bank doesn't argue Eileen lacked standing; it argues only that her TILA claim was time-barred.

TILA does not contain its own statute of limitations. "In the absence of a controlling federal limitations period, the general rule is that a state limitations period for an analogous cause of action is borrowed and applied to the federal claim[.]" Cnty. of Oneida v. Oneida Indian Nation, 470 U.S. 226, 240 (1985).

HRS § 657-1(1) (2016), the six-year breach-of-contract statute of limitations, is the most analogous. Cf. Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1098-99 (9th Cir. 2018) (applying Washington's six-year contract statute of limitations to TILA rescission enforcement claims). Eileen's counterclaim alleged she exercised her TILA rescission right on June 24, 2009, but the nonjudicial foreclosure nevertheless proceeded. Deutsche Bank's complaint was filed before Eileen's TILA rescission claim became time-barred. The Circuit Court erred by dismissing count 3.

**(3)** Count 4 alleged RESPA violations. Deutsche Bank argues the RLT was not a "borrower" authorized to sue under RESPA because Eileen signed the loan documents individually, not as the

11

trustee of her RLT. 12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this section shall be liable *to the borrower* for each such failure[.]" (emphasis added)).

Deutsche Bank relies on Keen v. Helson, 930 F.3d 799 (6th Cir. 2019). Keen is inapposite. There, Tara and Nathan Keen bought a house. Both signed the mortgage, but only Nathan signed the note. Tara got title to the house when they divorced. Nathan died. The loan servicer foreclosed. Tara sued the loan servicer for violating RESPA. The federal district court held that Tara was not a "borrower" under RESPA because she was never obligated under the note. Tara appealed. The Sixth Circuit affirmed, holding that a "'borrower' is someone who is personally obligated on a loan — i.e., someone who is actually borrowing money. Tara Keen does not fit that description, so she does not have a cause of action under RESPA." Id. at 800.

Here, Eileen was the borrower. Her counterclaim alleged she owned her home as trustee of her RLT when she signed the note. Viewing the counterclaim allegations in the light most favorable to Eileen, she had standing as her RLT's trustee to assert the RESPA violation because Deutsche Bank did not show she was not the beneficiary of her RLT. Cochran, 8 Haw. App. at 265, 799 P.2d at 66.

RESPA has a three-year statute of limitations for violations involving servicing a mortgage loan. 12 U.S.C. § 2614. The counterclaim alleged RESPA violations in June, October, and December 2008. Deutsche Bank's complaint was filed

12

before the earliest RESPA claim became time-barred.  The Circuit Court erred by dismissing count 4.

**(4)** Count 5 alleged breach of the Repayment Plan Agreement.  Deutsche Bank argues the RLT was not a party to the agreement because it was not a signatory.  Viewing the counterclaim allegations in the light most favorable to Eileen, she signed the Repayment Plan Agreement as the real party in interest under her RLT.  Deutsche Bank does not argue the breach of contract claim was time-barred.  The Circuit Court erred by dismissing count 5.

**B.    The Circuit Court erred by granting summary judgment on Deutsche Bank's ejectment claim.**

To prevail on its ejectment claim, Deutsche Bank had to prove it had "title to and right of possession of" the Kapaʻa property.  Kondaur, 136 Hawai'i at 241, 361 P.3d at 468.  In Kondaur the supreme court noted: "Because the title to the Property deeded by RLP [(the foreclosing mortgagee)] to Kondaur derives from a non-judicial foreclosure sale of the Property, the strength and validity of Kondaur's title is unavoidably intertwined with the validity of the foreclosure sale."  Id. at 241, 361 P.3d at 468.

Deutsche Bank submitted the Adjustable Rate Note, the Mortgage, and recorded copies of the Mortgagee's Affidavit of Foreclosure Under Power of Sale and Quitclaim Deed to support its motion for partial summary judgment.  The burden then shifted to Eileen to show there were genuine issues of material fact

13

precluding summary judgment.  <u>Pflueger</u>, 152 Hawaiʻi at 265, 526 P.3d at 242.

The Mortgage provided:

> **20. Sale of Note; Change of Loan Servicer; Notice of Grievance**. . . . If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.

Eileen submitted a 15-page declaration explaining in more detail the facts alleged in her counterclaim.  She also submitted copies of correspondence she received from Litton, the Repayment Plan Agreement, a $5,000 check to "Litton Mortgage," a Litton billing statement, correspondence with Litton and its foreclosure counsel, her December 16, 2008 letter disputing the debt, Litton's call logs, another 2-page declaration, and her June 24, 2009 TILA rescission letter.

Viewed in the light most favorable to Eileen, her evidence raised genuine issues of material fact about Fremont's, Litton's, and Deutsche Bank's breaches of the Mortgage; violations of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.33 (mortgage servicing transfers); Litton's and Deutsche Bank's breaches of the Repayment Plan Agreement; Litton's and Deutsche Bank's violations of 12 U.S.C. § 2605 (force-placed insurance); and Litton's and Deutsche Bank's violations of former HRS § 667-5(c) (Supp. 2008) (right to cure default).  If proven, the breaches and violations could invalidate the nonjudicial foreclosure, and

14

thus should have precluded summary judgment for Deutsche Bank on its ejectment claim.

> **C.    The Circuit Court erred by granting summary judgment for Deutsche Bank on Eileen's wrongful foreclosure counterclaim.**

Deutsche Bank argues that Eileen's wrongful foreclosure claim lacked merit because she failed to establish actual damages as required by <u>Lima v. Deutsche Bank National Trust Company</u>, 149 Hawaiʻi 457, 494 P.3d 1190 (2021).  In <u>Lima</u> the supreme court answered a question certified by the federal district court:

> When (a) a borrower has indisputably defaulted on a mortgage for real property, (b) a lender has conducted a nonjudicial foreclosure sale but has not strictly complied with the requirements governing such sales, and (c) the borrower sues the lender over that noncompliance after the foreclosure sale and, if the property was purchased at foreclosure by the lender, after any subsequent sale to a third-party purchaser, may the borrower establish the requisite harm for liability purposes under the law of wrongful foreclosure and/or section 480-2 of Hawaiʻi Revised Statutes by demonstrating the loss of title, possession, and/or investments in the property without regard to the effect of the mortgage on those items?

<u>Id.</u> at 460, 494 P.3d at 1193.  The supreme court held that "a borrower with no pre-foreclosure rights in property except as encumbered by a mortgage bears the burden of accounting for the effect of the mortgage in establishing the element of harm."  <u>Id.</u> at 469, 494 P.3d at 1202.

Eileen argues that <u>Lima</u> is distinguishable on its facts.  There, the borrowers had no pre-foreclosure rights in property except as encumbered by a mortgage, while Eileen contends "she absolutely had pre-foreclosure rights in the [P]roperty, including the right to make monthly payments towards

her debt under the mortgage loan, which she absolutely could do." Her opening brief asserts: "She is not asking for a free house, release of mortgage, or to be excused from her obligations under the mortgage loan contract. Instead, she is asking that her rights under the parties' contract be upheld."

A supreme court case decided after briefing was completed lends credence to her argument. In Llanes v. Bank of Am., N.A., 154 Hawaiʻi 423, 555 P.3d 110 (2024), several borrowers sued their lenders for nonjudicial foreclosures that didn't comply with statutory requirements. The foreclosed properties were sold to third parties. Id. at 426, 555 P.3d at 113. Discussing Lima, the supreme court explained:

> Accounting for the effect of the mortgage in establishing the element of harm means . . . factoring in the mortgage's value[.] This reading comports with the general rule in measuring damages, which is to give a sum of money to the person wronged which as nearly as possible, will restore him or her to the position he or she would be in if the wrong had not been committed. . . .
>
> Moreover, under Borrowers' own theory, they did not walk away empty-handed — their initial "invested debt" was returned to them on the backend when it was forgiven. The satisfaction of Borrowers' mortgage debts, which they do not contest here, represents a return of their "investment" on their own theory. If the "invested debt" was theirs on the front end, it was also theirs on the backend.

Id. at 432-33, 555 P.3d at 119-20 (cleaned up).

The supreme court contrasted the facts in Llanes and Lima with those in Santiago v. Tanaka, 137 Hawaiʻi 137, 366 P.3d 612 (2016). There, the Santiagos bought a tavern from Tanaka with a purchase money mortgage that didn't contain a power of sale. Tanaka had misrepresented the tavern's sewer costs during

16

negotiations.  The Santiagos initially withheld payments from Tanaka after discovering the sewer fees, but later cured their default.  Four months later, Tanaka sold the tavern to herself in a nonjudicial foreclosure, then resold it to a third party.  In Llanes, the supreme court summarized its Santiago decision:

> We held that Tanaka improperly foreclosed upon the Santiagos' tavern because (1) her misrepresentations and non-disclosures induced the Santiagos to purchase the tavern, (2) the mortgage altogether lacked a power of sale, and (3) the Santiagos cured their default.  Because the tavern could not be returned to the Santiagos, having been resold, we concluded that they were entitled to out-of-pocket losses of $1,412,790.79 as a result of the seller's wrongful foreclosure of the mortgage and subsequent sale of the tavern.
>
> . . . .
>
> Here [in Llanes], Borrowers were in different pre-foreclosure positions than were the Santiagos for two reasons.  First, Lender had the right to foreclose upon their properties under powers of sale.  Thus, their pre-tort position still includes a looming foreclosure.  Second, Borrowers were not current on their mortgages.  Thus, to the extent that they were improper at all, the foreclosures at issue here appear from the record to have been merely procedurally defective.  Indeed, the circuit court noted in its summary judgment order that Borrowers claim that Lender conducted the foreclosures in a wrongful manner by not complying with the technical requirements of the nonjudicial foreclosure statute and power of sale, instead of claiming that the foreclosures were wrongful because they should not have happened at all.

154 Hawaiʻi at 430, 431, 555 P.3d at 117, 118 (cleaned up).

Here, Eileen's declaration — which we must view in the light most favorable to her — showed that the nonjudicial foreclosure was not "looming."  Not only was she current on her mortgage, she tried to stay current after her mortgage was assigned to Wells Fargo.  The nonjudicial foreclosure would not have happened but for Fremont's, Litton's, and Deutsche Bank's alleged breaches of the Mortgage, alleged statutory violations,

17

and alleged breaches of the Repayment Plan Agreement. Eileen's declaration states she tried to timely pay what she was told she owed, even incurring pay-by-phone and Western Union fees to do so, and had "the ability to pay the reinstatement charges if we could ever get an exact amount in writing." Thus, as in Santiago, assuming Eileen's allegations are true "the foreclosures were wrongful because they should not have happened at all." Llanes, 154 Hawaiʻi at 431, 555 P.3d at 118.

In addition, in Llanes and Lima, the mortgaged properties had been sold to good-faith purchasers. The foreclosure sales, even if wrongful, could not be set aside and the borrowers could not recover their properties. Wilmington Sav. Fund Soc'y, FSB v. Domingo, 155 Hawaiʻi 1, 10, 556 P.3d 347, 356 (2024) (noting that "vacatur or reversal of a foreclosure judgment cannot affect title conveyed to the good faith purchaser"). But the borrowers' loan debts were also discharged. That is why they had to account "for the effect of the mortgage in establishing the element of harm." Lima, 149 Hawaiʻi at 469, 494 P.3d at 1202.

Here, the record does not show that Deutsche Bank sold the Kapaʻa property to a third party. If Eileen invalidated the nonjudicial foreclosure, she would regain the property. Llanes, 154 Hawaiʻi at 434, 555 P.3d at 121. She would still be liable to repay her mortgage loan over time, but she would be entitled to some recovery under "the general rule in measuring damages, which is to give a sum of money to the person wronged which as

nearly as possible, will restore . . . her to the position . . . she would be in if the wrong had not been committed." Id. at 432, 555 P.3d at 119 (brackets omitted). The Circuit Court erred by granting summary judgment on Eileen's wrongful foreclosure counterclaim.

> **D.** **The Circuit Court erred by granting summary judgment for Deutsche Bank on Eileen's quiet title claim.**

Deutsche Bank argued to the Circuit Court that Eileen had to allege she paid, or tendered, what she owed on her mortgage loan to maintain her quiet title counterclaim, citing Delapinia v. Nationstar Mortgage LLC, 146 Hawaiʻi 218, 228, 458 P.3d 929, 939 (App. 2020) (**Delapinia I**), vacated in part by Delapinia v. Nationstar Mortgage LLC, 150 Hawaiʻi 91, 497 P.3d 106 (2021) (**Delapinia II**).

A week before the hearing on Deutsche Bank's motion for partial summary judgment, the supreme court decided Delapinia II. The party who asserted the tender rule in Delapinia II was the mortgagee of the third party who had purchased the property in an allegedly wrongful nonjudicial foreclosure. The supreme court "decline[d] to opine whether the tender rule applies in Hawaiʻi wrongful foreclosure cases generally." 150 Hawaiʻi at 92, 497 P.3d at 107. It then held "that the tender rule is not an absolute bar to a quiet title action against a party to whom the plaintiff is not indebted[.]" Id. at 100, 497 P.3d at 115.

A quiet title action "may be brought by any person against another person who claims, or who may claim adversely to

19

the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim." HRS § 669-1(a) (2016). "Hawaiʻi case law explicitly provides that a plaintiff seeking relief under HRS Chapter 669 must demonstrate that he or she has title to the land, either via paper title or adverse possession, and that he or she has superior title compared to the defendant." Ibbetson v. Kaiawe, 143 Hawaiʻi 1, 17, 422 P.3d 1, 17 (2018).

Deutsche Bank incorrectly argues that Eileen's quiet title claim "was premised solely upon alleged defects in the foreclosure process." Eileen actually claimed her *default* was caused by Fremont's, Litton's, and Deutsche Bank's breaches of the Mortgage, statutory violations, and Litton's and Deutsche Bank's breaches of the Repayment Plan Agreement. She contends the nonjudicial foreclosure was wrongful because it should never have happened. She seeks reinstatement of her loan and title to the Kapaʻa Property, subject to Deutsche Bank's mortgage. Deutsche Bank did not show why the tender rule should apply under these circumstances. We hold it does not. On this record, the Circuit Court erred by granting summary judgment for Deutsche Bank on Eileen's quiet title claim.

## IV. CONCLUSION

We vacate in part the Circuit Court's March 23, 2021 order granting Deutsche Bank's motion for partial dismissal of Eileen's counterclaim; November 19, 2021 order granting Deutsche Bank's motion for partial summary judgment; and January 18, 2022

20

Final Judgment, all as against Eileen Marie Winters individually and as Trustee under that certain unrecorded Revocable Living Trust dated August 30, 1993, made by Eileen Marie Winters. This case is remanded for further proceedings consistent with this opinion.

On the briefs:

Frederick J. Arensmeyer,
for Defendant-Appellant
Eileen Marie Winters.

Jade Lynne Ching,
David A. Nakashima,
Ryan B. Kasten,
for Plaintiff-Appellee
Deutsche Bank National Trust
Company.

/s/ Karen T. Nakasone
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge